THE STATE, JOHN LOPER, PROSECUTOR, v. THE MAYOR, &c., OF THE CITY OF MILLVILLE:

1. Under the charter of the city of Millville, constables form a part of the police force of said city, and are under the protection of the act of March 25th, 1885 (*Rev. Sup.*, p. 574), which prohibits the removal of police officers of cities except for cause and after trial.
2. *Certiorari* is an appropriate remedy to remove out of the way of a prosecutor in possession of, and therefore presumptively entitled to, an office, any order or resolution which may be unlawfully used to disturb him in the possession and enjoyment of such office or its emoluments.
3. When title to office is the avowed or real subject of controversy, then *quo warranto* is the exclusive legal remedy.
4. Where a prosecutor, on the issue raised by himself, shows that he is in office by an invalid title, he cannot aver that a resolution of the corporation, whose officer he claims to be, is illegal, merely because it tends to disturb him in the unlawful possession of the office.
5. The act of March 25th, 1885, is not designed for the protection of those who are in office by wrong or usurpation.

On *certiorari*.

A writ of *certiorari* directed to the mayor and common council of the city of Millville, required that body to certify to this court its resolution of June 12th, 1889, removing the prosecutor from the office of constable of the First ward of said city. The resolution in question is as follows:

" WHEREAS, section three of the supplement to the charter of Millville, approved March fifteenth, eighteen hundred and seventy-one, says, among other things, that the marshal of said city and the constables of the several wards thereof shall be appointed by the mayor and common council, and be liable to removal from office at any time by the said mayor and common council for neglect of duty, or for any other cause ; therefore, be it

"*Resolved,* By the mayor and common council, sitting together for this purpose, that John Loper, George Madden and Frank B————, who have been acting as constables of the several wards of the city of Millville, be and they are hereby removed from office and from duty as constables, and be no longer permitted to exercise the duties thereof, for the causes that a conflict has arisen between the mayor and the common council in regard to the regularity of the appointment of the said constables, whereby their efficiency and usefulness as officers have been impaired, and the harmony which should exist between the mayor and police force of the city is destroyed, and the peace, good order and government of the city are thereby seriously interfered with, and legal suits and complications are likely to arise and are threatened, which would be detrimental to the best interests of the city."

The reasons assigned for reversing this proceeding are :

"*First.* That by section 25 of respondent's charter, approved February 26th, 1886, the prosecutor was a man employed in the police department of said city and could not be discharged except for statutory cause and after a fair trial ; and,

"*Second.* The action of the mayor and common council of March 26th, 1889, as appears by the return, together with the action of May. 3d, 1889, constituted the prosecutor an officer of the police force of the municipality, and it was illegal to discharge him by the action taken June 12th following."

Argued at November Term, 1890, before Justices KNAPP and REED.

For the prosecutor, *John J. Crandall.*

For the respondent, *David J. Pancoast.*

The opinion of the court was delivered by

KNAPP, J.   Under the charter provisions governing the city of Millville, there seems to be no room to doubt that those elected to the office of constable in said city form a part of the police force of the city.   The twenty-fifth section of the charter (*Pamph. L.* 1886, *p.* 125) confers powers and imposes duties upon the city constables such as pertain only to the local police, and, consequently, in this official character, they are within the protection of the statute which prohibits the removal of police officers of a city except for cause and after trial (act approved March 25th, 1885, § 1, as amended). *Rev. Sup., p.* 515.

And the causes for which removal from office is permitted are limited in said act to absence, incapacity and faulty conduct in the officer.   Such removal may be made only upon reasonable notice, a fair hearing and investigation of the charges upon which the removal is sought to be made. *Devault* v. *Camden,* 19 *Vroom* 433 ; *Ayers* v. *Newark,* 20 *Id.* 170.

The resolution of removal in this case was not based upon any charge against the officer, hence there was no trial—there being nothing to try.

It is obvious, therefore, that the resolution was inefficient to disturb the prosecutor in a rightful possession of office.

The return made to the writ, in addition to the resolution of removal ordered to be certified, embraces the proceedings by virtue of which the prosecutor claims his appointment to the office, as well as the subsequent action of the mayor and council in choosing a successor to the prosecutor in the office.   Counsel, in their argument, discussed the legality of the prosecutor's election under the provisions of the city charter, as well as the validity of the corporate action in choosing the one designed to succeed him.

The latter subject was, in our judgment, beyond the scope of this litigation.

We are not told by the case presented who, when the writ of *certiorari* issued, was in possession of the office. But whether the subsequent appointee was, or was not, the incumbent, he was not, and could not, be a proper party under this writ. If he were in and claiming right to the office, such right could be challenged only on *quo warranto.*

A number of quite recent decisions in the state serve to define, in procedure affecting office, the boundary line between. the jurisdiction of this court in *certiorari* and under *quo warranto.*

It is unnecessary to do more than cite those bearing directly upon the point: *Bradshaw* v. *City of Camden,* 10 *Vroom.* 416; *Haines* v. *Freeholders of Camden,* 18 *Id.* 454; *Fitzgerald* v. *New Brunswick, Id.* 479; *S. C. on error,* 19 *Id..* 457; *Simon* v. *Hoboken,* 23 *Id.* 367.

The principle clearly deducible from the cases is, that *certiorari* is an appropriate remedy to remove out of the way of a prosecutor in possession of, and therefore presumptively entitled to, an office, any order, resolution or other action; adverse to his rights, which may be unlawfully used to disturb him in the possession and enjoyment of such office or its emoluments. But when title to office is the avowed or real subject of controversy, then *quo warranto* is the exclusive legal remedy.

There seems to exist some diversity in our cases in respect to the facts which, in the judgment of the court, will determine the character of the issue, whether one of title or not. In a few instances uniform effect has not been given to apparently similar facts. But the decisions are in unison touching; the ruling principle, and under its force we are not at liberty to look into the subsequent election for any purpose to be served by this writ.

Can we, in deciding upon the legality of the resolution of removal, inquire into the mode of relator's election? Had nothing more appeared in the case than his possession of the

·office, his title for our present purposes would have been presumed valid. But if, on an issue raised by himself, he shows that he is in by an invalid title, he cannot aver that a resolution of the corporation, whose officer he claims to be, is illegal, merely because it tends to disturb him in the unlawful possession of the office. The *status* which he makes for himself is not such as to be protected here, unless we interpret the enactment of 1885, before referred to, as designed for the protection not only of those actually or presumably entitled to office, but those as well who are in by wrong or usurpation. We do not so understand the statute.

The legality of the resolution complained of is not asserted upon the ground of an observance of the provisions of the Police Tenure of Office act, but for the reasons, expressed in the resolution, that the relator had not a legal appointment. The direct inquiry now is as to the legality of the resolution, and, as germain to that subject, the validity of relator's appointment to office thus incidentally presented is open to consideration here.

Was the relator, then, legally chosen to office? The power of appointment is given by the supplement to the charter of Millville, approved March 15th, 1871, which enacts that "the marshal of said city and the constables of the several wards thereof shall be appointed by the mayor and common council, and be liable to removal from office at any time by the said mayor and common council for neglect of duty, or for any other cause." The charter is silent respecting the mode in which the mayor and common council shall make the appointments. There are two methods, within the letter of this statute, of joint participation in the election of officers, one by a united body, composed of the members of the common council and the mayor, deciding by a majority vote. The other, nomination by the mayor and confirmation by vote of the common council sitting as such. I can see no reason why, in the absence of other legislative intent, expressed or to be inferred, the corporation might not, by appropriate corporate action, elect to proceed by either method. No formal resolu-

tion seems to have been adopted by the municipal authority to regulate the mode of choosing these officers; but the case ·shows, the practice uniformly pursued since the passage of the supplement, to have conformed to the course lastly indi- ·cated—that is, the mayor nominating and the council, by its separate action, deciding upon such nomination. The city has thus practically adopted that course of procedure, and it ·is one that is clearly within the terms of the charter. But we think it more likely that the legislature had in mind, in enact- ·ing this charter provision, the latter mode as the exclusive ·formula for executing the power conferred.

The mayor, elected by the city at large, stands at the head ·of the municipal government. He is given a veto power over ·legislation and a chief control of the police force. These con- ·siderations strongly suggest that participation in the work of ·appointing police officers, by the single vote of the executive, ·does not accord to him that weight in the matter that the legislature contemplated he should have. Besides that, the ·other mode of election is with us so unusual a procedure, that if intended as the one to be pursued we would reasonably ·expect to find it expressly prescribed in the law.

In most city charters in the state, the appointing power is ·conferred, to a greater or less extent, upon the mayor and ·legislative body of the corporation in terms quite like those used in this enactment. And when the course of procedure is expressly marked out in the law, invariably, so far as has ·been observed, the mayor nominates to the office.

The course of action is manifestly shaped after models found in all our larger organized systems of government. With us the common rule is, that where the executive, of whatever ·government, takes part in filling offices, he, acting alone, names the person by him selected for appointment.

With this fact patent to the mind of the lawmaker when passing the act before us, we may infer the intent that its practical execution should conform to the common mode of · ·exercising powers like those delegated.

In the prosecutor's case neither of the two methods indicated was attended to in the action designed to elect him. He was neither nominated by the mayor, nor was he chosen in a joint meeting of the mayor and council. In fact, the mayor nominated, according to usage, another person to the office. This action of the mayor the council totally disregarded, and then, independently of him, one of their number nominated, and they voted for the prosecutor and declared that he was elected.

This proceeding was clearly illegal. It was not within the spirit or letter of the charter, and there was no election to the office.

The prosecutor, therefore, having shown himself wrongly in the office, cannot complain of injustice or illegality in the resolution for his removal. Wrongfully in the office the resolution could not unlawfully disturb him. Nor can this writ be used as a means to support or prolong his illegal possession of the office.

The writ should be dismissed, with costs.

For the prosecutor, *John J. Crandall.*

For the respondent, *David J. Pancoast.*