THE STATE, HORACE ROBERSON, PROSECUTOR, v. THE MAYOR AND COUNCIL OF THE CITY OF BAYONNE.

1. *Quo warranto* is the only direct and adequate remedy for the trial and determination of a title to a public office, and the judgment in such an action is the only one which affords complete and substantial relief. The review by *certiorari* of the proceedings of an election or appointment to a public office, can determine nothing which would be of any efficacy as a bar, or have any other effect, in a subsequent information in the nature of a *quo warranto*, nor could the question arising upon such review, although judicially determined, be regarded as *res adjudicata* in the subsequent information.

2. Collateral questions regarding the legality of an election to office may be raised and determined by *certiorari*, in testing the validity of laws or the ordinances and resolutions of municipal bodies, yet when the purpose of the writ is obviously to test the right to a public office, and the proceedings of the municipal body brought up by the writ consist only of the resolution or other action electing a person to such office, the writ will be dismissed because an information in the nature of a *quo warranto* is the only proceeding by which the title of the person so elected and claiming the office can be attacked.

3. An incumbent cannot proceed by information in the nature of *quo warranto* against one who has not been in possession and user of the office. The incumbent must await the attack of his adversary, and if the claimant otherwise succeeds in obtaining possession and user of the office, under the election or appointment of a municipal body having general power to elect, the only remedy of the previous incumbent is by *quo warranto* to test the title of the person so gaining the possession of the office.

On *certiorari.*

Argued at June Term, 1895, before Justices VAN SYCKEL, MAGIE and LIPPINCOTT.

For the prosecutor, *Gilbert Collins.*

For the defendants, *Thomas F. Noonan.*

The opinion of the court was delivered by

LIPPINCOTT, J. On July 7th, 1891, William D. Salter was elected by the board of councilmen of the city of Bayonne treasurer of that city, under and by virtue of the provisions of an act of the legislature entitled "An act to authorize the election of a city treasurer in cities of the second class for a longer term than two years," approved March 17th, 1891. *Pamph. L., p.* 166 ; *Gen. Stat., p.* 498. This act provided that the term of office of such treasurer as might be " elected " should be five years. Mr. Salter qualified and entered upon the duties of his office, and continued in office until June 5th, 1894. At a meeting held on this date he tendered his resignation, to take effect upon the qualification of his successor. At the same meeting his resignation was accepted, and the board of councilmen elected Horace Roberson, the prosecutor, as such treasurer, who, after qualification, entered upon the duties of the office, and has ever since performed them.

He contends that his term of office at least continues over the unexpired term of Mr. Salter, which would end, according to the provisions of the charter, on the first Monday in May, 1896, and, according to the act of 1891, on July 7th, 1896.

On April 29th, 1895, the membership of the board of councilmen having changed, at a meeting held on that day it elected John C. Bouten treasurer of the city. The board of councilmen contend that under certain sections of the city charter of the city of Bayonne (*Pamph. L.* 1872, *p.* 699, § 35), the treasurer of the city holds at the pleasure of the councilmen. This section 35 provides that the treasurer shall hold at the pleasure of the councilmen, who shall from time to time appoint a treasurer. They also further contend that the statute of 1891, to which reference has been made, fixing the term of treasurer for five years, as well as the statute of 1889 (*Pamph. L., p.* 171), which fixed the term for two years, are both inapplicable to the city of Bayonne, or if applicable in terms they are special laws and unconstitutional. Bouten has qualified as treasurer of the city, but the prosecutor continues to hold the office and perform its duties, and sues out this writ of *certiorari* to review the legality of the proceedings of the board of councilmen in the election or appointment of Bouten and his title to such office.

It is conceded that the power to elect or appoint a treasurer, under the city charter or other statutes in terms applicable, is vested in the board of councilmen of the city.

The prosecutor contends that, under the act of 1891, he still remains the treasurer of the city, and entitled to hold the office until at least the first Monday in May, 1896.

The defendants contend that the city charter is the valid statute authorizing the appointment or election of a treasurer; that Bouten has been, in accordance with the charter, elected or appointed to such office, and has qualified for the same, and is entitled to the office, and to the performance of its duties, and to receive its emoluments.

The defendants also contend that the force and efficacy of a review of their proceedings and judgment thereon, if of any force and effect whatever, are to determine not only the legality of their proceedings, but also the title of Bouten to this office, and also as necessarily involved, the determination of the title of the prosecutor to the same office.

Several questions relating to the construction and constitutionality of the statutes relating to this subject have arisen, but the cause must be determined without the consideration of these matters.

It is obvious that the title to this office is in dispute between these parties. The question whether Roberson or Bouten is entitled to the office is the only question which has been discussed. The prosecutor seeks a determination that these proceedings of the board of councilmen constitute no title in Bouten to the office, and therefore they should be set aside as illegal. His election and the legality of his election are both attacked by the prosecutor.

The defendant seeks a determination that the prosecutor illegally holds the office by virtue of statutes which are invalid and unconstitutional, or if valid then inapplicable, and that his term has expired, and thus there exists a vacancy which they are authorized to fill, and thus the election of Bouten should be upheld and their proceedings affirmed.

This is a proceeding, under whatever guise or name it appears, to test the title to this public office. The title to the office " is the avowed or real subject of controversy," and *quo warranto* is the exclusive remedy. I do not think it has ever been held in this state that where there existed the question of title to public office between two parties that it could be determined by *certiorari*. It has universally been held the other way. The general principle has been so universally established that *quo warranto* is the only action by which the title to a public office can be looked into and tested, as to need no citation of authorities to support it, and the cases are so numerous that the principles governing the jurisdiction cannot now be drawn in question, and they are applicable as well to public offices of this character as to offices filled by a popular election. If proceedings for the election of public officers can be reviewed by *certiorari*, and their legality and result tested in this way, then the most extensive branch of the jurisdiction by *quo warranto* has been swept aside and the adequate remedy provided by such an action nullified. *Quo*

*warranto* is the only direct and adequate remedy for the trial and determination of a title to a public office, and the judgment in such an action is the only one which affords substantial and complete relief. The review by *certiorari* determines nothing, judicially, which would be of any efficacy as a bar to, or have any other effect in, a subsequent proceeding in the nature of *quo warranto*, nor could the determination of questions arising therein be regarded as *res adjudicata*. Recent statutes have amplified the use of the information in the nature of *quo warranto*, in relation to the title of such offices as this one, and have made the remedy fully effective not only in determining the title to an office, but also by the judgment actually installing the person in whose favor the right is determined. The relator can file his information without leave of the court. *Gen. Stat., p.* 2633. The title of the relator, as well as that of the respondent, can be determined, and the order and judgment of the court can be enforced, by appropriate process. *Id., p.* 2634, §§ 11, 12.

Apparently there has been some slight confusion in the application of the general doctrine in this state, but its expression has been without any variance. An examination of the cases will show that the application has been such that it cannot now be contended that *certiorari* is a remedy of any appropriativeness whatever.

In the case of *State* v. *Board of Chosen Freeholders of the County of Camden,* 6 *Vroom* 217, the board refused to accept the official bond of a party who, according to the determination of the county canvassers, had been elected to the office of collector of the county, on the ground that he had not been legally elected, but it was held by the court that his election could only be called in question on a direct proceeding by *quo warranto.*

The case of *Bradshaw* v. *City Council of the City of Camden,* 10 *Vroom* 417, is cited as a case which supports the view that *certiorari* is an appropriate proceeding to test the validity of the proceedings of a municipal body in electing a public officer to fill the place of one already in possession.

This contention, having regard to the language of the court in the opinion, would appear to be well founded, and if the case had been followed the court now would be absolutely bound by it. It does not seem to have been followed in a single instance where subsequently the same question under similar circumstances was involved. And it must be noticed that the learned justice, in his opinion, stated as the reason for holding the rule he did that the prosecutor sued not for the purpose of testing the title. It may be remarked that the litigation in that case had assumed such shape that both parties rested the case upon the legality of the proceedings of the council and were willing to abide the decision on that question alone.

In the case of *Fitzgerald* v. *New Brunswick*, 18 *Vroom* 488, the writ was directed not only to the resolutions of the council appointing the police officers to fill the places made vacant by removal, but also to the resolutions declaring the offices vacant. The questions discussed were the legality, under the statute, of the resolutions vacating the offices and removing the incumbents. The power of the council to vacate the offices or remove the incumbents under the statutes appertaining to the subject-matter, was the only question determined. For the purpose in this case for which the writ of *certiorari* was used by the court, it was undoubtedly an appropriate remedy. It is quite distinguishable from the Bradshaw case. The resolution of the council reviewed was an *omnibus* one, removing the whole police force of New Brunswick from office, and the subsequent proceedings appointing another police force were not discussed or given any force in the opinion of the court. In this case, in the Court of Errors and Appeals, 19 *Vroom* 457, the Chief Justice, in delivering the opinion of the court, declared that the action of the common council in removing the police force was in contravention of the prohibition of the statute of 1885; that no policeman in any city of this state could be removed except for misconduct on cause shown and after trial, and that the statute did prohibit the act of removal was too plain for discussion.

The question whether the writ of *certiorari* was the appropriate remedy was not discussed in the opinion.

The resolution removed by *certiorari* into this court in the case of *Loper* v. *Millville,* 24 *Vroom* 362, was one of the mayor and council of the city of Millville removing Loper, the prosecutor, from the office of constable of the first ward of that city. By the twenty-fifth section of the charter of that city the powers and duties of the local police were conferred upon constables, and consequently, in this official character, the court determined that the constable was within the protection of the statute which prohibited the removal of police officers of a city except for cause and after trial. *Rev. Sup.,* p. 515. The whole attention of the court was directed to the resolution of removal, and finding it was not based upon any charges against the officer and that there was no trial before the removal, set the resolution aside, and as being applicable to the case then under discussion, Mr. Justice Knapp said that "the principle clearly deducible from the cases is that *certiorari* is an appropriate remedy to remove out of the way of a prosecutor in possession of, and therefore presumptively entitled to, an office, any order, resolution or other action adverse to the rights which may be *unlawfully* used to disturb him in the possession and enjoyment of such office or its emoluments." The enunciation of this principle, as applied to the resolution under review, was undoubtedly a correct statement of the law. It did not appear by the resolution that any other claimant to the office existed, and the writ was dismissed because the prosecutor, upon his own showing, was wrongfully in office and therefore could not complain of injustice or illegality in the resolution for his removal. The learned justice in his opinion is careful to say "but when title to office is the avowed or real subject of controversy, then *quo warranto* is the exclusive legal remedy."

In the cases of *Van Alst* v. *Jersey City,* 20 *Vroom* 156 ; *Leeds* v. *Atlantic City,* 23 *Id.* 332 ; *Markley* v. *Cape May Point,* 26 *Id.* 104, and *Corwin* v. *Markley, Id.* 107, the question was not raised. In these cases the questions arose

over resolutions vacating certain offices, to review which it was conceded *certiorari* was the appropriate writ.

The case of *Haines* v. *Board of Chosen Freeholders of Camden County,* 18 *Vroom* 454, is directly in point, and so far as a direct authority is needed, must control the disposition of the case now under discussion. Haines was in possession, by proper appointment, of the office of steward of the alms-house of Camden county, under a resolution fixing the term for three years. During his possession, with more than a year of his term unexpired, the board of chosen freeholders rescinded the resolution fixing the term of Haines and pro-ceeded to elect one Adams to the same office. The writ of *certiorari* was directed to these proceedings of the board. After referring to the case of Bradshaw v. City of Camden, Mr. Justice Scudder, in delivering the opinion of the court, says : " The effort here made is not only to vacate the rescind-ing resolution which was passed to shorten the prosecutor's term of office, but also to attack the election of Charles F. Adams as his successor. Under the authority of this resolu-tion, Adams is directly interested in this proceeding and should be made a party, if it were admissible thus to question the validity of his election and his right to the office and franchise by *certiorari.* But this cannot be done." It was further declared that the title to hold offices under laws, ordi-nances or resolutions cannot be definitely determined in these proceedings to which one of the claimants is not made a party, and that where the purpose of the writ is to forestall the opinion of the court, if *quo warranto* information should there-after be used, and to act directly on the election of a claimant to office who is not made a party, it should be dismissed.

A case as fully in point as the case last cited is that of *Simon* v. *Mayor and Council of the City of Hoboken,* 23 *Vroom* 367. Simon was city physician of the city of Hoboken and in possession of the office with a right to hold until his suc-cessor should be lawfully appointed. One Helfer was ap-pointed and confirmed by the mayor and council as successor

to Simon.   Simon sued out a writ of *certiorari,* directed to the proceedings for the election and confirmation of Helfer, and attacked the appointment on the ground that Helfer did not receive the requisite number of votes in the council to make his confirmation legal.   *Pamph. L.* 1889, *p.* 328.   The interest of the prosecutor was clear that as the previous incumbent he had the right to hold until his successor should be lawfully appointed, and the court decided the case upon the assumption that Helfer had not obtained possession of the office, and Mr. Justice Dixon, in the opinion of the court, says : " If, however, he [Helfer] was not then in office, the case of *Bradshaw* v. *City of Camden,* 10 *Vroom* 416, seems to hold a doctrine which would warrant the acting official in attacking by *certiorari* unlawful proceedings designed to elect his successor.   But the later case of *Haines* v. *Freeholders of Camden,* 18 *Id.* 454, discountenances this doctrine and lays down the principle that the incumbent has no ground of suit until he is ousted, and then he must resort to *quo warranto,* and that the court will not permit him to litigate on a *certiorari,* to which his real adversary is not a legal party, the very question which can be effectually decided only on information in the nature of *quo warranto.*  We deem ourselves bound, as also we are inclined, to follow this later decision in the present case, where the point at issue is simply Helfer's title to a public municipal office.". .  .  .

The writ in this case now in hand is directed to the proceedings of the mayor and council of the city of Bayonne, electing Bouten to the office of treasurer, and the sole purpose sought in this review is to have that election declared illegal.   There is, as there can be, no other purpose than to have determined the right and title of Bouten to the municipal office.   With the sole exception of the case of Bradshaw *v.* City of Camden, whenever this result has been attempted by the use of *certiorari,* it has met with a negative response from the court.   The effect would be to judicially determine a claimant's right to a public office in a suit in which he cannot legally be made a party, and besides the judgment, if he could

·be made a party to the writ, could not be *ouster* in case he had obtained possession, and was adjudged not to be entitled. If his election was adjudged illegal, the prosecutor in such case could not by any judgment upon this writ be reinstated, and if he was not in possession and his election was held to be legal, no judgment upon this writ would be at all effective in his behalf. It would be only upon an information in the nature of *quo warranto* that the questions arising between the claimants could be adjudged and their rights effectively enforced.

The prosecutor, being still in the possession of the office, cannot prosecute an information against Bouten. Before this can be done there must be a *user* as well as a claim. *Rex* v. *Whitwell*, 5 *T. R.* 84; *Updegraff* v. *Crans*, 47 *Penna. St.* 103; *Haines* v. *Freeholders*, 18 *Vroom* 454.

If Bouten should succeed in obtaining possession of the office of treasurer and make *user* of it, then the prosecutor will be driven to a *quo warranto* to determine the title of Bouten. The prosecutor cannot anticipate, by disputing the title of Bouten to the office, until he succeeds in the *user* of it. *Haines* v. *Freeholders, supra.*

The conclusion is that the writ of *certiorari* in this case has for its sole object an attack upon the proceedings of the mayor and council by which Bouten was elected to the office of treasurer of the city of Bayonne, and upon a review of these proceedings, it is sought to try and determine his title to that office, and therefore the writ must be dismissed, with costs.