JOSEPH L. M. DU FOUR ET AL. v. THE STATE SUPERIN-
TENDENT OF PUBLIC INSTRUCTION ET AL.

Submitted March 24, 1905—Decided July 6, 1905.

1. The state superintendent of public instruction is authorized by
   law to decide disputes and controversies as to the election of
   members of the board of education of certain municipalities.
2. *Certiorari* is not the appropriate proceeding to determine the title
   to an office.

On *certiorari* bringing up the determination of the state
superintendent of public instruction as to the election of mem-
bers of the board of education of South Bound Brook.

Before Justices FORT and GARRETSON.

For the prosecutors, *Alvah A. Clark.*

For the defendants, *George W. Anderson* and *Robert H.
McCarter,* attorney-general.

The opinion of the court was delivered by

GARRETSON, J.    This writ of *certiorari* brings up a judg-
ment or decision of C. J. Baxter, state superintendent of pub-
lic instruction, that the election of members of the board of
education of South Bound Brook, held in March, 1902, was
illegal.

The prosecutors of the writ are Joseph L. M. Du Four,
William Long and James M. Cowins, who claim to have been
duly elected.

The pertinent statutory provisions in force at the time of
the election are contained in "An act to establish a system
of public instruction" (Revision of 1900). *Pamph. L., p.*
192.    Section 85 of the act provides that the board of edu-
cation of municipalities like South Bound Brook shall consist
of nine members, three members to be elected each year, to

hold office for three years, and if a vacancy occurs the person elected to the vacancy to hold for the unexpired term. Section 86 provides for the reduction of the number of members to five by a vote at an annual school meeting. If five be determined upon as the number, no election for members is to be held at that meeting; at the next annual meeting two members are to be elected for three years, and at the second annual meeting two are to be elected for three years and one for one year, and afterwards, at the annual meetings, a member or members in place of those whose term shall have expired for the term of three years. Section 90 provides all elections shall be by ballot; in case a member is to be elected for a full term and a member is to be elected to fill an unexpired term, the ballots shall designate which of the persons voted for is to be elected for the full term and which for the unexpired term.

By the act of 1900 (*Pamph. L.*, p. 192, § 10), the state superintendent shall decide, subject to appeal to the state board of education, all controversies and disputes that shall arise under the school laws, and his decision shall be binding until upon appeal a decision shall be given by the state board of education. The same provision appears as section 10 of the act of 1902. *Pamph. L.,* p. 69. Under the act of 1902 (*Pamph. L.*, p. 69, § 26, ¶ 4), the county superintendent is given power to appoint members of the board of education for any district which shall fail to elect such members at the regular time.

In the case of *Buren* v. *Albertson*, 25 *Vroom* 72, involving the construction of a similar provision in section 13 of the School act of 1874 (*Rev.*, p. 1071), upon a *certiorari* bringing up an order of the county superintendent adjudging an election of a school trustee to be illegal and void and the office of trustee vacant, it was held that controversies over an election of school trustee were embraced in those provisions. It was also held, in that case, "even though the right to the office of school trustee is to be ultimately determined on *quo warranto*, there is no impropriety in its being passed upon for immediate purposes by such instrumentalities as the leg-

islature may appoint, citing *Conger* v. *Convery,* 23 *Vroom* 417. Prior to March, 1900, South Bound Brook had a board of education consisting of nine members. At the annual school meeting held in March, 1900, it was voted to reduce the number of members to five, and, as provided by law, no election was then held. In March, 1901, two members were elected for three years, as provided by law. In March, 1902, three members were to be elected, two for three years and one for one year; at that election the three prosecutors received a plurality of votes, but the ballot did not designate which was to be elected for the full term and which for the unexpired term, as required by law. The prosecutors entered into office and held office for one year. At the expiration of that time and at the annual meeting of March, 1903, there were three vacancies to be filled—those of the two who had been elected in 1901 and one of those who had been elected in 1902 —but it could not be told which one because of the failure to designate on the ballot the terms of office for which the members were elected. In March, 1903, the clerk of the board failed to call a meeting for an election for members of the board and no election was held, so that after March, 1903, the only legally elected members of the board were the two elected in March, 1901, who had a year yet to serve. The term of one of those elected in 1903 was by the law to be for only one year, and so had expired, but it had not been designated which one that was, and the terms of the other two, which were to continue for two years longer, were still running, but it had not been determined who the two were.

April 25th, 1903, a petition was presented to the state superintendent of public instruction, setting forth the above facts and that one of those elected in 1901 had resigned, and that the other elected in that year was the only remaining legal member of the board, and praying the state superintendent to inquire into the matter and declare the said vacancies to exist, to the end that the same may be filled by the county superintendent of public instruction in the manner provided by law.

Upon this petition the state superintendent adjudicated

that the election of members of the board of education in said district held in March, 1902, was illegal, for the reason that the ballots used at said election did not specify which of the persons elected was to serve for the short term, as required by section 87 of the School law. This judgment was given June 8th, 1903, and on June 12th, 1903, the prosecutors appealed to the state board of education. July 6th, 1903, notice of the hearing of the appeal was given by the state board for July 9th, 1903. Nothing further seems to have been done with this appeal. On the 12th of June, 1903, the county superintendent appointed three persons to fill the vacancies in the board of education, and the three persons so appointed were sworn into office June 18th, 1903. It is stipulated in the facts that the prosecutors, after the election in March, 1902, took the oath of office required by law, and have acted as members of the board of education; it is also stipulated that the three persons appointed by the county superintendent to fill vacancies were duly sworn, have acted as members of the board of education and been recognized by the county superintendent since their appointment.

The writ of *certiorari* was sued out October 7th, 1903, and is directed to the state superintendent of public instruction and to the three persons appointed by the county superintendent to fill the vacancies in the board as above stated. It seems, therefore, that the state superintendent was acting within the powers conferred upon him by statute, as interpreted by this court.

Without deciding whether the prosecutors, by their appeal to the state board of education, have divested themselves of the right to a review of this action by *certiorari* in advance of the determination of that appeal to the state board, we will consider whether, for other reasons, this writ should lie.

The purpose of this writ is to set aside the adjudication of the state superintendent.

The prosecutors would be entitled, if in office, to have reviewed a decision of some other tribunal which if put in effect would disturb the prosecutors in holding office. If the defendants are in office, title thereto can only be tried by *quo war-*

*ranto.  Loper* v. *Millville,* 24 *Vroom* 362.  It is stipulated in the case that the appointees of the county superintendent were duly sworn, have acted as members of the board of education of the school district and been recognized by the county superintendent since their appointment.  It is only upon the idea that the effect of the adjudication of the state superintendent has been to vacate their offices, and that the county superintendent has filled the vacancies existing by reason of the removal of the prosecutors, that the prosecutors are seeking relief, and this is therefore manifestly a proceeding to determine the title of the encumbents, who are made parties to the proceeding, to their offices as members of the board of education.  An adjudication upon this writ that the state superintendent has no authority to decide as he did could be of no advantage to the prosecutor unless the encumbents could be removed and the prosecutors installed in their places. `

Such a result cannot be accomplished by a writ of *certiorari.* *Certiorari* is not a proper proceeding to try the title to office. That must be done by writ of *quo warranto.  Loper* v. *Millville, supra; Roberson* v. *Bayonne,* 29 *Vroom* 325; *Stites* v. *Freeholders of Cumberland, Id.* 340.

The writ will be dismissed, with costs.