7 N.J. Super. 141 (1950)
72 A.2d 350
JOHN A. WELSH, GEORGE B. MELICK, AND CHARLES A. HILDEBRANT, APPELLANTS,
v.
THE BOARD OF EDUCATION OF THE TOWNSHIP OF TEWKSBURY AND THE STATE BOARD OF EDUCATION OF THE STATE OF NEW JERSEY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 6, 1950.
Decided March 28, 1950.
*142 Before Judges JACOBS, EASTWOOD and JAYNE.
Mr. Clark Crane Vogel argued the cause for the appellants.
Mr. Anthony M. Hauck, Jr., argued the cause for the respondent the Board of Education of the Township of Tewksbury.
The opinion of the court was delivered by JAYNE, J.S.C.
The prosecution of this appeal brings to our attention the following succession of events.
Pursuant to the provisions of the statute a resolution adopted by the Board of Education of the Township of Tewksbury, Hunterdon County, proposing the issuance of bonds for the acquisition of a designated site and the erection thereon *143 of a school building with adequate furnishings was submitted to the voters of the school district at a special election held May 16, 1949. R.S. 18:7-85. Of the 620 votes cast, the tally revealed that 311 votes were in the affirmative and 309 in the negative.
On May 26, 1949, the three appellants associated with seven other duly qualified taxpayers and voters presented a petition to the Commissioner of Education, who is clothed with authority to hear and determine all controversies and disputes arising from the administration of the school law, challenging the accuracy of the canvass of the votes. R.S. 18:3-14. Cf. Buren v. Albertson, 54 N.J.L. 72 (Sup. Ct. 1891); DuFour v. State Superintendent, 72 N.J.L. 371 (Sup. Ct. 1905).
The object of the petition is conspicuous and indubitable. The petition alleges that "errors were made in counting or declaring the vote upon said public question, in that said ballots were improperly marked and illegal votes were counted," and the sole prayer of the petition is that the "New Jersey Commissioner of Education conduct a recount of the ballots cast at said election and set a time and place for said recount."
In obedience to an order of the Commissioner made on May 31, 1949, a recount of the ballots was conducted on June 2, 1949. The Commissioner rendered his decision on June 7, 1949, in which he determined that 311 valid ballots were cast in favor of the proposal, 306 in the negative, and 3 ballots should be rejected.
The Legislature has deemed it advantageous to the public welfare to limit reasonably the time within which the validity of school district elections authorizing the issuance of bonds can be controverted. The present enactment reads:
"No action, suit, or proceeding to contest the validity of the election ordering the issue of bonds shall be instituted after the expiration of twenty days from the date of the election." R.S. 18:7-89.
Apprehending, presumably, that the recount had not capsized the announced result of the election, the appellants on June 3, 1949, and as yet within twenty days after the election, filed a complaint in lien of certiorari in the Law Division of *144 the Superior Court seeking to contest and nullify the election upon the general and indefinite allegations that ineligible, unregistered, and disqualified persons had voted.
It was not then evident that the remedies afforded by the school law had been exhausted, and during the pendency of a motion to strike the complaint the action in the Superior Court was discontinued on July 6, 1949, by stipulation of the attorneys. Ridgway v. Upper Freehold Board of Education, 88 N.J.L. 530 (Sup. Ct. 1916); Cf. Oliva v. Garfield, 137 N.J.L. 475 (Sup. Ct. 1948); affirmed, 1 N.J. 184 (Sup. Ct. 1948).
The intervening occurrences are significant. The limitational period of twenty days expired on June 6, 1949, and the proceedings before the Commissioner were concluded by his decision delivered on June 7, 1949, but it was not until June 29, 1949, that the appellants submitted to the Commissioner a petition for a rehearing, seeking to introduce in the recount proceedings the consideration of the allegations embodied in the complaint filed in the Superior Court. On August 11, 1949, the Commissioner determined that the original petition requested a recount and not an exhaustive and explorative investigation of the election, that the granting of the petition for such a rehearing in the circumstances would amount to an abrogation of the statutory limitation, and he accordingly dismissed the petition.
The story of the case is not yet complete. On August 11, 1949, eighty-seven days after the election and sixty-five days after the recount had been determined, the appellants filed with the Commissioner "An Amended Petition for Recount of Ballots Cast at a Special Election * * *" containing the additional allegations that votes were cast by disfranchised persons and that "the ballots used at said election were invalid in that they did not conform to law." The proposed amendment so inopportunely presented was disallowed. An appeal was taken to the State Board of Education and on October 13, 1949, the determinations of the Commissioner were affirmed.
We consult the notice of appeal to ascertain the respects in which the appellants claim to be aggrieved.
*145 Nothing in the manner in which the recount was conducted nor in the propriety of the Commissioner's determination of the patent validity of ballots is here impugned. The appellants assert that the Commissioner erred in refusing to consider in pursuance of the petition for a recount that ineligible, unregistered, disqualified, and disfranchised persons voted, that the ballots did not conform to the statutory requirements, and that the notice of the election was inadequate.
Aside from the tolling of the statute, some of the grounds of contest which were sought to be asserted do not appear to possess substantial merit. For examples, we think that the ballot, in its composition and form, was in substantial conformity with the directory provisions of the statute. R.S. 18:7-47. Then, too, we would be disinclined to demolish an election held in the month of May, 1949, because the notice informing the voters that the polls would be open from four o'clock P.M. until eight o'clock P.M. failed to indicate standard time or daylight saving time.
The pressure of the argument on behalf of the appellants is noticeably applied to the refusal of the Commissioner, sustained by the State Board of Education, to permit the appellants, having initially inaugurated a recount with a fruitless result, thereafter to remodel and convert the original recount proceeding into an election contest in disregard of the statute of limitation.
Successive Legislatures in the perennial development of our general election laws have manifestly recognized a distinction between a recount and a contest, and the essential sufficiency of a petition for a contest under the General Election Act was discussed in In re Clee, 119 N.J.L. 310 (Sup. Ct. 1938).
It is not made evident that the Commissioner was importuned to amend the petition to conform to evidence which had been introduced before him either by consent or without objection at the recount proceedings.
It has been the firmly implanted rule that an entirely new and distinctly different cause of action cannot by means of an amendment of the pleadings be introduced after the statute has tolled the action. Lower v. Segal, 60 N.J.L. 99 *146 (Sup. Ct. 1897); Fitzhenry v. Consolidated Traction Co., 63 N.J.L. 142 (Sup. Ct. 1899); Doran v. Thomsen, 79 N.J.L. 99 (Sup. Ct. 1909); O'Shaughnessy v. Bayonne News Co., 9 N.J. Misc. 345 (Cir. Ct. 1931); affirmed, 109 N.J.L. 271 (E. & A. 1932); Casavalo v. D'Auria, 12 N.J. Misc. 81 (Sup. Ct. 1933); affirmed, 113 N.J.L. 328 (E. & A. 1934); Rygiel v. Kanengieser, 114 N.J.L. 311 (E. & A. 1934).
The existing liberality in permitting amendments is bestowed to prevent legalistic technicalities from impeding, or obstructing, the paramount aspiration to promote substantial justice in all litigious controversies. The present progressive judicial policy is not, however, intended to afford a refuge to languid and dilatory litigants.
Legal procedure may well be characterized as a means rather than an end in the administration of justice, but although simplified, the procedure must nevertheless be orderly, instrumental, and serviceable. Ciocca v. Hacker, 4 N.J. Super. 28 (App. Div. 1949). It is desirable that each and every action or indeed quasi-judicial proceeding shall be given a reasonably definite form and structure embodying the issues in controversy and the nature of the relief or remedy requested. The decision may then be responsive to the issue or issues submitted.
It would be supremely impracticable, if not pernicious, to condone a practice which would permit adventurous litigants by means of successive amendments to the pleadings in the original action to prosecute, seriatim, a procession of distinctly disparate causes of action and thus elude the statutory limitations of time.
Normally the question at issue in the allowance of amendments is not the judicial power to do so but the propriety of exercising the power in the particular case. Where a statute of limitations is involved, unwarranted graciousness might well constitute an unjustifiable judicial trespass upon the legislative field.
Our observation of the circumstances of the present case impels us to dismiss this appeal.