216 N.J. Super. 255 (1987)
523 A.2d 665
WILLIAM C. WALKER, JR., AND LAURICE WALKER, PLAINTIFFS-APPELLANTS,
v.
ATLANTIC CHRYSLER PLYMOUTH, INC., AND ROBERT J. SEARS, T/A ROBERT J. SEARS, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 28, 1987.
Decided March 16, 1987.
*256 Before Judges FURMAN, SHEBELL and STERN.
Frank G. Olivo argued the cause for appellants (Donio, Olivo & Howell, attorneys; Frank G. Olivo, on the brief).
*257 Stephen R. Dumser argued the cause for respondent, Atlantic Chrysler Plymouth, Inc. (Schuenemann, Gercke & Dumser, attorneys; Stephen R. Dumser, on the brief).
Gary C. Chiumento argued the cause for respondent, Robert J. Sears (Pennington & Thompson, attorneys; James Curcio, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
Appellant, William Walker, an employee of Atlantic Chrysler Plymouth, Inc. ("Atlantic"), an automobile dealership, and his wife, Laurice Walker, appeal the granting of summary judgments in favor of defendants, Atlantic and its insurance broker, Robert J. Sears, trading as Robert J. Sears, Inc.
Plaintiffs' cause of action arises out of defendants' failure to provide additional underinsured motorist coverage ("UMI") on an Atlantic demonstrator car plaintiff William was driving at the time of an accident in which he suffered injuries and damages in excess of the basic mandatory UMI coverage of $15,000. N.J.S.A. 17:28-1.1a(1). Plaintiff asserts that the broker owed him a duty to recommend that the employer get greater UMI coverage and also that his employer should have informed him of the insurance coverage limitations.
The facts are not in dispute. On May 23, 1984 Walker was involved in a motor vehicle accident as a result of which the other driver died. William, although on his own time, was driving his employer's automobile which was provided for plaintiff's use. The vehicle was insured under a policy which Atlantic procured through its broker of several years, Sears. The policy had liability limits of $500,000 and excess liability of $5,000,000, but only $15,000 in uninsured and underinsured motorist coverage.
The principals of Atlantic relied fully on Sears to obtain all insurance necessary for the operation of a car dealership; their instructions were simply to "cover us." Sears had the authority *258 to acquire, delete and amend coverage as he thought appropriate, so long as the premium was not too high. Additional UMI coverage for the vehicles used by Atlantic's employees to bring it to the maximum available would have cost about $800 per year. Prior to the accident Sears did not suggest that Atlantic acquire greater UMI coverage nor did Atlantic ever request excess coverage; Sears doubted the principals of Atlantic knew the UMI limits. After the accident, Atlantic increased its uninsured motorist coverage to $500,000. Atlantic did not advise its employees as to the extent of coverage on the vehicles Atlantic provided them.
In considering whether the motion judge was correct in granting summary judgment this court applies the same standards as the trial court: it first decides whether there was a genuine issue of material fact and, if there was not, it then decides whether the trial judge's ruling on the law was correct. Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2. If the papers show that there is no real material issue, then summary judgment should be granted. Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 75 (1954). The court must not decide issues of fact; it must only decide whether there are any such issues. 17 N.J. at 73.
Plaintiffs contend that an employer "has a duty to advise an employee that coverage as to underinsured/uninsured motorist protection is or was maintained at its statutory minimum amount ..." and that Atlantic's breach of that duty deprived "plaintiff of the opportunity to maintain increased coverage through alternate sources, and specifically through personal automobiles owned within the family." The issue in its broadest sense is whether an employer owes a duty to an employee to explain the terms and conditions of fringe benefits. *259 We find no authority supporting the existence of such a duty. This is not a situation where the employer misrepresented the terms and conditions of a fringe benefit on which the employee relied suffering detriment. See Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 340-341 (1979). We agree with the motion judge that "Atlantic had no duty to maintain anything beyond the minimum limits." In the absence of concealment or misrepresentation as to the limits of coverage, we find no liability for Atlantic's failure to affirmatively inform plaintiff that only the statutorily required UMI coverage was provided.
Plaintiffs argue that Sears was negligent in failing to advise Atlantic of the availability of increased UMI and that, as third party beneficiaries of the contract between Atlantic and Sears, plaintiffs are proper persons to urge Sears' breach of its duty to Atlantic. Sears contends he fulfilled his duty to his client, Atlantic, in that he procured legally sufficient UMI. He also urges that plaintiff had no reason to believe the vehicle which Atlantic provided to him had anything more than the coverage required by law and that he owed no duty to the employees of Atlantic.
An insurance broker owes a duty to his client to exercise good faith and reasonable skill in procuring the insurance sought or needed by his client. Rider v. Lynch, 42 N.J. 465, 476 (1964).
He is expected to possess reasonable knowledge of the types of policies, their different terms, and the coverage available in the area in which his principal seeks to be protected. If he neglects to procure the insurance or if the policy is void or materially deficient or does not provide the coverage he undertook to supply, because of his failure to exercise the requisite skill or diligence, he becomes liable to his principal for the loss sustained thereby. [Ibid.]
See also Bates v. Gambino, 72 N.J. 219, 224-225 (1977).
We have held that a broker or agent may be liable to his client for failing to offer or provide uninsured or underinsured motorist coverage in excess of the $15,000/$30,000 statutory minimum. Sobotor v. Prudential Property & Casualty Insurance *260 Co., 200 N.J.Super 333 (App.Div. 1984). In Sobotor the agent was allegedly asked to obtain $100,000/$300,000 automobile liability coverage, and full coverage or "best available" coverage under the other provisions of an automobile policy. The agent procured only $15,000/$30,000 uninsured/underinsured motorist coverage, the statutory minimum under N.J.S.A. 17:28-1.1a without advising the principal that the agent's company offered increased coverage for an additional $5 premium. 200 N.J. Super. at 336. We concluded under those circumstances that the agent had a duty to advise the client that higher coverage was available and rejected the argument that the duty does not include advising as to optional coverage over that required by law. This court reasoned:
Regardless of the type of coverage sought, a client should be entitled to rely on the special skill and knowledge possessed by the agent in order to best obtain the desired coverage. It does not seem reasonable to permit an agent to withhold information which might prove useful to one seeking coverage simply because the insurance sought is not mandatory. [Id. at 339].
Our holding in Sobotor recognized that insurance professionals, "[b]ecause of the increasing complexity of the insurance industry and the specialized knowledge required to understand all of its intricacies ...," often stand in a fiduciary capacity to the client and "should be required to use their expertise with every client...." Id. at 341. This duty was found to exist notwithstanding the fact that it was "not clear whether plaintiff told [the agent] that he wanted to be `fully covered with whatever coverage was available....'" Id. at 336.
Here, unlike Sobotor, the record to this point does not suggest that Atlantic either asked Sears for coverage in specific terms or was dissatisfied with the services Sears rendered. Nonetheless, the insured's silence does not necessarily overcome the agent's fiduciary duty to inform the insured of the additional coverage where as here Atlantic asserts it totally relied on Sears. Considering Sears' specialized professional knowledge and Atlantic's reliance thereon, a jury may find Sears had a duty to inform Atlantic of the additional UMI *261 coverage available as he was well aware Atlantic was relying on his expertise. Further, considering the high coverage limits Sears provided against liability, a jury might also find that if notified of the optional coverage Atlantic would have acted favorably on the advice in the exercise of sound business judgment. In this regard, we also note Sears' deposition testimony that he had authority from Atlantic to purchase insurance on their behalf without having to check it out with them so long as it was not a major expenditure.
Plaintiffs rely on Eschle v. Eastern Freight Ways, Inc., 128 N.J. Super. 299 (Law Div. 1974) to support their contention that they are third party beneficiaries of this duty. There, plaintiff was a passenger in a car whose owner and operator had ordered insurance from a broker who had not obtained it. Plaintiff sued the owner and the owner responded by suing the broker for failing to procure the insurance. Plaintiff then amended her complaint to assert a direct claim against the broker which the broker moved to dismiss on the ground that it failed to state a cause of action. The Law Division held that a direct action was maintainable because one of the purposes of statutorily required insurance was to provide a source of payment for injured third parties. According to the court, its holding did "little more than synthesize two established rules in New Jersey law. First, that an insurance agent is liable to the potential insured for the failure to obtain [requested] coverage,... and second, that an injured party acquires an interest in an insurance policy...." 128 N.J. Super. at 306 (citations omitted).
Eschle is factually distinguishable because Sears did procure the coverage mandated by law and further the principal in Eschle had asserted a direct action against the broker, whereas Atlantic has made no claim against Sears. These factual distinctions however do not justify a contrary result. We are not dealing with a situation where there is no relationship or privity between the insured and the injured party seeking to recover. *262 Plaintiff William was an employee and an obvious intended beneficiary of the insurance coverage. His wife may also be a beneficiary under the policy provisions. If under the insurance contract an employee stands in no different position than a member of the household of the insured or a passenger in a vehicle operated by the insured with respect to ability to obtain UMI benefits, we see no basis for not recognizing the employee's right to claim beneficiary status in these circumstances. It was clearly foreseeable that the employee would be damaged in the event the broker did not carry out his duty to inform the insured considering the employee and employer relationship. Cf. Fortugno Realty Co. v. Schiavone-Bonomo Corp., 39 N.J. 382, 393 (1963).
A critical issue is whether the employee may maintain an action for benefits, which he would have received had the insurance agent or broker carried out the duty to the insured, when the insured neither complains nor institutes an action on its own behalf. The fact that the employer has not complained concerning the failure of the agent to inform him of available insurance is understandable in the context of this litigation where the employer or his liability insurance carrier denied liability to the employee for failure to arrange for the additional insurance or to advise the employee of its absence. We see no just reason why the failure of the principal to make a claim against the agent should preclude a jury from considering whether the agent has failed to fulfill its duty to the principal and thereby caused direct damage to a foreseeable beneficiary standing in so close a relationship to the principal. We do not extend this ruling to purported third party beneficiaries having no relationship to the insured.
We conclude that summary judgment was improvidently granted on the record as it presently exists. We reverse and remand to the trial court for further proceedings.