240 N.J. Super. 404 (1990)
573 A.2d 501
CHARLOTTE E. TOMASZEWSKI, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF FRANK E. TOMASZEWSKI, DECEASED, PLAINTIFF-APPELLANT,
v.
MCKEON FORD, INC., FORD MOTOR CREDIT CO., AND TRANSAMERICA OCCIDENTAL LIFE INSURANCE CO., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 12, 1990.
Decided April 30, 1990.
*405 Before Judges KING, SHEBELL and KEEFE.
Marie V. Nasuti argued the cause for the appellant (R. Alan Aslaksen, attorney).
Patricia L. Dee argued the cause for the respondent McKeon Ford, Inc. (Capehart & Scatchard, attorneys; Robert A. Baxter, of counsel; Patricia L. Dee, on the brief).
*406 Morris G. Smith argued the cause for the respondent Ford Motor Credit Co. (Freeman, Zeller and Bryant, attorneys; Morris G. Smith, on the brief).
Matthew V. DelDuca argued the cause for the respondent Transamerica Occidental Life Insurance Co. (Dechert, Price & Rhoads, attorneys; George G. O'Brien, on the brief; Matthew V. DelDuca, on the brief).
The opinion of the court was delivered by KEEFE, J.A.D.
This appeal is resolved by defining the duty of an automobile dealer to a purchaser of an automobile under a retail installment sales contract when credit life and disability insurance is sold to the purchaser in connection with the sale. Although this question has not been previously decided, established principles defining an insurance agent/broker's duty foretell the result. Consequently, we hold that summary judgment was improvidently entered in favor of defendants McKeon Ford, Inc. (McKeon)[1] and Transamerica Occidental Life Insurance Co. (Transamerica) but affirm the judgment entered in favor of Ford Motor Credit Company (FMC).
These are the facts. In July 1987, plaintiff Charlotte Tomaszewski visited McKeon for the purpose of buying a 1987 Ford Thunderbird. She initially spoke with John McKeon Jr., a principal of McKeon, who was her cousin. She told him that she wanted to purchase a vehicle in her own name; "something she could say was her own." McKeon advised plaintiff that she would probably not be approved for credit unless her husband also joined as a co-buyer. After that discussion, he turned plaintiff over to a salesman who took the credit information from plaintiff.
*407 When plaintiff and her husband, Frank, returned to the dealership the next day to finalize the transaction, they met with another employee of McKeon, presumably the finance manager. They discussed the length of the loan, the monthly payments and the purchase of an extended warranty. With the exception of advising plaintiff where to sign the application form for credit life and disability insurance coverage, there was no discussion between the credit manager and the Tomaszewskis concerning credit life or disability insurance. Plaintiff signed at the bottom of the retail installment contract in the space provided for the "buyer." Her husband signed in the space provided for the "co-buyer." The application for credit life and disability insurance is located in the center of the second page of the contract. Plaintiff signed for both life and disability insurance in the spaces provided. Her husband did not sign beneath her name. The space to the left of plaintiff's signature under the word "insured(s)" was not completed. Although both the plaintiff and her husband were afforded an opportunity to read the contract, neither one read it. The premium charge for the credit life insurance was $480.42 and $841.97 for the disability insurance. We were advised at oral argument that the dealer receives a commission equal to 45% of the premium.
Transamerica thereafter issued an insurance policy which identified plaintiff as the "insured." The box providing for single coverage under the policy was marked with an "X", and the box providing for joint coverage was left blank. Plaintiff did not read the policy when she received it.
At the time of the transaction, July 2, 1987, plaintiff earned approximately $800 gross per month as a chiropractor's assistant. Her husband earned $2,250 per month. The amount financed was $18,180.59 and the monthly payments for the vehicle were $412.73 for 59 months. When FMC questioned the credit application, John McKeon Jr. asked FMC to approve it because of his relationship with plaintiff.
*408 On November 19, 1987 Frank Tomaszewski died. Plaintiff filed a claim with Transamerica for credit life benefits. Transamerica rejected plaintiff's claim, noting that only plaintiff was insured under the policy. Plaintiff was unable to make the requisite monthly loan payments prompting FMC to repossess the vehicle. The balance due at the time of repossession was $23,525.61, and the deficiency after repossession sale was $6,526.85. FMC has made a claim for the deficiency against the plaintiff.
Plaintiff instituted this action against defendants seeking various forms of relief. Plaintiff's cause of action was not artfully pleaded in the complaint. However, various theories of recovery now presented on appeal were set forth in her brief in opposition to defendants' motions for summary judgment. In addition to opposing defendants' motions, plaintiff moved to amend her complaint to add John McKeon Jr. and John McKeon III as defendants based upon their position as licensed insurance agents, claiming negligence in the sale of the credit life and disability policy. The Law Division judge granted all defendants' motions and denied plaintiff's motion to amend. This appeal followed.
Plaintiff raises various issues on appeal. We conclude that two of the issues raised have merit and require reversal. Therefore, we address only those issues.
In our view, the focal point of the analysis begins with McKeon's duty to plaintiff in connection with the purchase of the insurance policy. The basis of plaintiff's cause of action against McKeon is not so much what the policy covered but what it did not cover. We agree with Transamerica that the policy clearly and unambiguously informs the reader that plaintiff is the only insured. Thus, while the policy, had it been read by plaintiff, may have informed her that she was insured, it did not serve, nor could it have, as the vehicle for informing her of the significance of not insuring her husband's life. Only McKeon was in a position to advise plaintiff in that regard.
*409 McKeon was either an agent or a broker of Transamerica in this case. It is not necessary to resolve McKeon's precise status in order to discuss the duty owed to the plaintiff. Sobotor v. Prudential Property & Cas. Ins. Co., 200 N.J. Super. 333, 337 n. 1, 491 A.2d 737 (App.Div. 1984). McKeon as agent/broker for the procurement of insurance, stood in a "fiduciary capacity" to the plaintiff. Walker v. Atlantic Eagle Crysler Plymouth, 216 N.J. Super. 255, 260, 523 A.2d 665 (App.Div. 1987). The duty owed to the plaintiff under these circumstances was established in the case of Rider v. Lynch, 42 N.J. 465, 201 A.2d 561 (1964):
One who holds himself out to the public as an insurance broker is required to have the degree of skill and knowledge requisite to the calling. When engaged by a member of the public to obtain insurance, the law holds him to the exercise of good faith and reasonable skill, care and diligence in the execution of the commission. He is expected to possess reasonable knowledge of the types of policies, their different terms, and the coverage available in the area in which his principal seeks to be protected. If he neglects to procure the insurance or if the policy is void or materially deficient or does not provide the coverage he undertook to supply, because of his failure to exercise the requisite skill or diligence, he becomes liable to his principal for the loss sustained thereby. [Id. at 476, 201 A.2d 561].
In Harr v. Allstate Ins. Co., 54 N.J. 287, 255 A.2d 208 (1989), Justice Hall said:
Recognition is given to the usual and justifiable reliance by the purchaser on the agent, because of his special knowledge, to obtain the protection he desires and needs, and on the agent's representations, whether that agent be a so-called `independent' but authorized representative of the insuror, or only an employee. [Id. at 303-04, 255 A.2d 208.]
The agent's duty to act is thus not only dependent on what the insured requests by way of coverage, i.e., the insured's "desires", but also what the insured's circumstances require to fulfill the expectations for which the insurance is being purchased, i.e., the insured's unarticulated "needs." It is reasonably inferable from the evidence that plaintiff was an unsophisticated purchaser. She clearly relied upon McKeon to advise her how to structure the transaction so that she could be the registered owner yet have her credit approved by FMC. Plaintiff was even less sophisticated, and thus more reliant on *410 McKeon, in understanding how to best protect her investment through the purchase of credit insurance. As between plaintiff and McKeon, it was the latter who was in the best position to explain the purpose for such insurance and the significance of electing coverage for one co-buyer but not the other. The "inequality of position [between an insured and an agent] requires that the agent deal with laypeople as laypeople and not as experts in subtleties of the law." Sobotor, 200 N.J. Super. at 343, 491 A.2d 737. If McKeon thought it was incumbent upon him as a part of his relationship with plaintiff to explain to her how to structure the transaction so as to obtain credit approval, we do not think it unreasonable to require that he also have the duty to inform plaintiff concerning the purpose of disability and term life insurance and the consequences of failing to insure the principal income producer without whom credit would not have been approved.
It is irrelevant in our view that plaintiff did not specifically ask for coverage on her husband's life. The duty of an agent to advise an insured of available coverage for the type of insurance then being purchased exists regardless of the exact wording of the inquiry. Walker, 216 N.J. Super. at 260, 523 A.2d 665; Sobotor, 200 N.J. Super. at 336-37, 342, 491 A.2d 737. (But see Citta v. Camden Fire Insurance Assoc., Inc., 152 N.J. Super. 76, 377 A.2d 779 (App.Div. 1977), and Cox v. Santoro, 98 N.J. Super. 360, 237 A.2d 491 (App.Div. 1967) which are factually distinguishable.)
The provisions of the Credit Life and Health Insurance Act N.J.S.A. 17B:29-1 to 17B:29-13 supports plaintiff's argument that an agent's duty to disclose relevant information exists.
When more than one person is jointly obligated in connection with an indebtedness, credit insurance may be written either on an individual basis or, at the option of the insureds, on a joint basis. [N.J.S.A. 17B:29-2d.]
Both the Law Division judge and the defendants placed importance on the optional nature of the insurance as in some way lessening the burden on McKeon. Just the opposite is true. It is clear to us that the Legislature intended that the obligors *411 under an installment sales contract have the choice to either insure or not insure the contract, individually or jointly. However, that option cannot be intelligently exercised or waived unless it has been communicated to the obligors. To achieve the legislative goal the statute must be construed to require the agent who sells the insurance to provide the purchaser or purchasers with the required information and advice.
We conclude from the foregoing analysis that McKeon had a duty to the plaintiff relative to the sale of the credit life and disability policy, and that reasonable minds could conclude that McKeon breached that duty. Therefore, the summary judgment entered in favor of McKeon is reversed and the matter is remanded.
The order denying the joinder of John McKeon, Jr. and John McKeon, III is also reversed. We find absolutely no prejudice to either proposed defendant by reason of their admittedly late joinder. Both proposed defendants were the agents in the McKeon dealership licensed by the State to sell the insurance in question. John McKeon Jr. was personally familiar with the transaction and gave plaintiff advice concerning the transaction. He also personally interceded on plaintiff's behalf when FMC questioned the soundness of the credit application. He, more than anyone, should have known of plaintiff's insurance needs and expectations. Moreover, both proposed defendants are apparently principals of the dealership and have been and will be involved with this litigation. Amendments to pleadings should be freely granted in the interest of justice. R. 4:9-1. This is especially true when the failure to join necessary parties may preclude a subsequent law suit because of the entire controversy doctrine, Cogdell v. Hospital Center at Orange, 116 N.J. 7, 560 A.2d 1169 (1989), and where no undue delay or prejudice will result from the amendment.
We also reverse the entry of judgment in favor of Transamerica. The relationship between McKeon and Transamerica has not been completely developed in the appellate *412 briefs. However, there is at least sufficient evidence in the record to support an argument that McKeon was Transamerica's agent.[2] We take no position on the question of Transamerica's responsibility to plaintiff in the event that McKeon is determined to be an agent of Transamerica, nor do we take a position on the allocation of risk as between Transamerica and McKeon should that be the case. See e.g., Johnson v. Mac Millan, 233 N.J. Super. 56, 558 A.2d 24 (App.Div. 1989); Regino v. Aetna Cas. & Surety Co., 200 N.J. Super. 94, 490 A.2d 362 (App.Div. 1985). These issues are best left to a full development of the record and initial determination by the trial court. Finally, the issues raised concerning the summary judgment in favor of FMC are clearly without merit. R. 2:11-3(e)(1)(E).
Therefore, the summary judgment entered in favor of McKeon, the order denying plaintiff's motion to amend the complaint and the judgment in favor of Transamerica is reversed. The judgment entered in favor of defendant FMC is affirmed. The matter is remanded for further proceedings consistent with this opinion.
NOTES
[1] All references herein to "McKeon", unless otherwise specified, shall mean McKeon Ford, Inc., its principals John McKeon Jr. and John McKeon III, as well as its employees.
[2] At oral argument Transamerica contended that McKeon was a broker. We cannot resolve that issue because of the insufficient record.