260 N.J. Super. 256 (1992)
615 A.2d 1280
SUN SOURCE, INC., PLAINTIFF-RESPONDENT,
v.
MARY R. KUCZKIR, DEFENDANT AND THIRD-PARTY PLAINTIFF-APPELLANT,
v.
JOHN L. BUZZI, JR., THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1992.
Decided November 9, 1992.
*258 Before Judges MICHELS, BAIME and WALLACE.
Ronald Horowitz argued the cause for appellant (Schnirman, Charney, Kahn & Howard, attorneys; Ronald Horowitz, of counsel and on the brief).
Kenneth L. Winters argued the cause for respondent (Carella, Byrne, Bain, Gilfillan, Cecchi & Stewart, attorneys; Kenneth L. Winters, of counsel and on the brief).
The opinion of the Court was delivered by MICHELS, P.J.A.D.
Defendant and third-party plaintiff Mary R. Kuczkir appeals (1) from a judgment of the Law Division entered on a jury verdict that awarded plaintiff Sun Source, Inc. damages in the sum of $11,965.04 and dismissed defendant's counterclaim against plaintiff and third-party complaint against third-party defendant John L. Buzzi, Jr. (Buzzi), and (2) from a pretrial *259 order that denied her motion to amend the counterclaim and third-party complaint to assert claims grounded on the Consumer Fraud Act.
In early 1987, defendant, after seeing construction work on a house similar to her own, stopped and met with Buzzi, the principal of plaintiff. Defendant wanted her single family ranch style house remodeled so as to make it more open. She had liked the work performed by plaintiff and felt that plaintiff could create the "California" house or style she desired. After consultation, a blue print was prepared by an independent draftsman illustrating the substantial renovations to be made. The original plan was submitted to and approved by the municipal building officials in July 1987. The initial cost of the project was $67,000, and defendant made a downpayment of $2500. The original plan was expanded to increase the size of the addition, redesign the master bedroom and bath, and reconfigure the office space. The cost of the revised project was increased to $87,000. This plan also was submitted and approved by the municipality.
On August 10, 1987, the parties signed the contract, which in pertinent part, provided that:
Any alteration or deviation from the above specifications involving extra costs, will be executed only upon written orders, signed by the Owner and Builder, and will become an extra charge over and above the amount agreed to here under.
Plaintiff commenced work sometime between August 10, 1987 and October 8, 1987. After the work commenced, defendant made numerous additional changes to the project. In November 1987, the parties signed an Additional Work Authorization form for various additions, including a skylight, a cathedral ceiling in the office, rearrangement of certain hallways, installation of new windows, addition of a sliding door and new front door, and extending the garage totaling $9,116.00. In December 1987, the parties signed a proposal for the construction of a new deck for $6,164. Defendant later again signed the proposal after the deck project had been completed to her *260 satisfaction. In January 1988, defendant signed another proposal for changes to the stonework and style of the fireplace, the addition of a new heat pump, and certain attic work totaling $6,825. While plaintiff did not sign the proposal, the proposal was drafted on a pre-printed form with the plaintiff's corporate name and address printed on the form.
Later in January 1988, both parties signed another Additional Work Authorization form for certain electrical work totaling $5,036.23. Sometime thereafter plaintiff charged defendant $3,964.42 for certain installation work, plumbing work and kitchen appliances. Defendant claims she did not sign the invoice although it apparently bore her signature. Plaintiff contends it was signed by defendant in his presence. In February 1988, plaintiff charged defendant an additional $2,111.75 for certain items which she had requested. Defendant, however, refused to sign the invoice. Finally, plaintiff requested another $3,200.00 for additional work performed at defendant's request but not included in any change orders. The total cost of the work, including all additions and changes was $120,715.55.
In June 1988, after the work was completed, the municipal building inspector inspected the project to determine whether a Certificate of Occupancy could be issued. The Certificate of Occupancy was not approved because the inspector could not verify that the bath vent extended to the extension of the house, a deck permit had not been obtained, nor sketchings submitted, the fire box was cracked, the door to the garage had no fire rating, a portion of the garage needed sheetrock, and equipment in the attic did not meet the mechanical code as the inspector could not see the equipment. The house was again inspected in August 1990 and all of the previous problems except the deck, the attic equipment and a light switch in the bathroom were eliminated.
Defendant paid plaintiff $100,749 of the total cost of $120,715.55, less a credit of $419, leaving an unpaid balance due of *261 $19,547.32. When defendant refused to pay the claimed balance, plaintiff instituted this action in May 1988 seeking to recover damages, costs, interest and attorneys fees. In July 1988, a default against defendant was entered when she failed to answer the complaint. The default was subsequently vacated by consent and in October 1988, defendant filed an answer in which she denied owing any money and asserted as defenses that the action was barred by the Statute of Limitations, that plaintiff provided certain items that she did not authorize or order and that she was induced to accept certain items without proper explanation as to their nature and costs. Defendant also filed a counterclaim asserting that plaintiff failed to perform the project in a professional and workman-like manner and seeking damages for property damage, economic loss and pain and suffering. In addition, defendant filed a third-party complaint claiming that Buzzi was individually liable for the damages she sustained. In April 1988, a default was again entered against defendant for her failure to answer interrogatories. In July 1989, the trial court again vacated the default and ordered defendant to furnish more specific and responsive answers to the interrogatories.
The case was originally assigned a trial date of August 6, 1990. On August 3, 1990, three days before trial and more than two years after institution of this action, defendant moved to amend her pleadings to add claims based on violations of the Consumer Fraud Act. Specifically, she claimed that plaintiff and Buzzi (1) misled her as to the new sheetrocking, and the energy efficiency and cost savings of a new heat pump; (2) charged her for change orders that were neither written nor signed by the parties, and (3) demanded payment of the balance on the contract before applying for a Certificate of Occupancy. The trial court denied defendant's motion to amend this pleading to include the Consumer Fraud Act claims even though the trial date was adjourned until September 24, 1990.
At the conclusion of the trial, the jury, in response to special interrogatories, found that (1) defendant breached her contract *262 with plaintiff; (2) defendant owed plaintiff a balance of $11,965.04 and (3) plaintiff had not breached its contract with defendant. Defendant's motions for a judgment notwithstanding the verdict or, alternatively, a new trial were denied. The trial court accordingly entered judgment awarding plaintiff damages in the sum of $11,965.04 against defendant and dismissed defendant's counterclaim and third party complaint. This appeal followed.
Defendant seeks a reversal of the judgment and a remand for a new trial, contending generally that (1) the trial court erred in denying her motion to amend the counterclaim and third-party complaint to include claims based on the Consumer Fraud Act; (2) the Consumer Fraud Act bars plaintiff's claims and supports her cause of action and remedy; (3) the trial court erred in its charge to the jury and (4) the trial court erred in denying her motion for a judgment notwithstanding the verdict or, alternatively, for a new trial. We disagree and affirm. We are satisfied from our review of the record and consideration of the arguments present that the evidence is sufficient to support the jury verdict; that the trial court's determinations on the motions for a judgment notwithstanding the verdict and a new trial do not constitute a manifest denial of justice, and that all of the issues of law raised are clearly without merit. R. 2:11-3(e)(1)(B), (C) and (E). Further comment, however, is appropriate with respect to some of these contentions.

I.
We are convinced that the trial court properly exercised its discretion by denying defendant's motion to amend her pleadings to include claims based on violations of the Consumer Fraud Act. Defendant delayed over two years before asserting these additional claims. It was only after the case was scheduled for trial and then only three days before the scheduled trial date that defendant moved to include the Consumer Fraud Act claims. Moreover, defendant twice defaulted, first for *263 failure to file an answer to the complaint and later, for failure to answer interrogatories. Despite a change in counsel, the substituted attorney handling the matter had the case for over a year.
Beyond this, defendant's dilatory tactics prejudiced plaintiff. As the motion to amend the pleadings was made only on the eve of the trial, discovery had not been undertaken with respect to these issues. The Consumer Fraud Act claims exposed plaintiff to greater liability by potentially holding it responsible for treble damages and counsel fees. Thus, to permit an amendment to assert these new and different causes of action would have necessitated greater and more extensive discovery and further delayed the trial. The matter was already pending in the court for over two years without these readily discernable claims being raised. Thus, because of defendant's lengthy and inexcusable delay in moving prior to the eve of trial to amend the pleadings to include the Consumer Fraud Act claims and the clear prejudice to plaintiff, the trial court's ruling did not constitute a manifest injustice or abuse of judicial discretion. See Stuchin v. Kasirer, 237 N.J. Super. 604, 609, 568 A.2d 907 (App.Div.), certif. denied, 121 N.J. 660, 583 A.2d 346 (1990); Miltz v. Borroughs-Shelving, a Div. of Lear, 203 N.J. Super. 451, 460, 497 A.2d 516 (App.Div. 1985); Wm. Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J. Super. 277, 299, 375 A.2d 675 (App.Div.), certification denied, 75 N.J. 528, 384 A.2d 507 (1977); Welsh v. Board of Education of Tewksbury Tp., 7 N.J. Super. 141, 146, 72 A.2d 350 (App.Div. 1950).
Finally, defendant's reliance on Tomaszewski v. McKeon Ford, Inc., 240 N.J. Super. 404, 573 A.2d 501 (App.Div. 1990), and Brower v. Gonnella, 222 N.J. Super. 75, 535 A.2d 1006 (App.Div. 1987), is misplaced as these cases are clearly distinguishable from this matter. In Tomaszewski, the plaintiff sought to amend its pleadings to include parties who were the principals of the named defendant and actively involved in the litigation. We, therefore, found no undue delay or prejudice resulted from amendment. Similarly, in Brower, we allowed *264 the plaintiff to add a new defendant because there was no evidence of prejudice to the other parties and no history of dilatory tactics. This is not the situation here. Defendant inordinately delayed moving to amend her pleadings to include the Consumer Fraud Act claims until the eve of trial to the prejudice of plaintiff.

II.
We are also satisfied that given the entirety of the charge, the trial court properly instructed the jury as to the applicable legal principles under which the jury was to decide the issue. First, the trial court specifically precluded the Consumer Fraud Act from the litigation when it properly denied defendant's motion to amend her counterclaim and third-party complaint to include claims based on the Act. Second, defendant misconstrues the jury charge to infer that the trial court instructed the jury on the Consumer Fraud Act when discussing the writing requirement of her contract with plaintiff. On the contrary, the trial court substantially followed the Model Jury Charges in instructing the jury on general principles of builder/construction contract law and, more specifically, on the particular contract provisions agreed to by the parties. See Model Jury Charges §§ 4.3, 4.4, 4.5 (June 1971).
The basis of this action was a contractual dispute and not a Consumer Fraud action. Thus, the charge contained the contractual language requiring all work changes and additions to be in writing and signed by both parties. The fact that the contractual provisions are similar to the Consumer Fraud Act does not mean that the trial court instructed the jury on that Act. Indeed, the trial court specifically declined to instruct the jury on the portions of the Act as requested by defendant.
Furthermore, defendant's allegation that the trial court's discussion of applicable substantive builder/construction contract law principles was confusing and prejudicial is unavailing. The trial court's discussion was clear and proper. If anything *265 caused confusion, it was defendant's insistent and improper application of the Consumer Fraud Act. Moreover, defendant failed to assert her objection that the charge was misleading or confusing during the charge conference. See R. 1:7-2. Here, charging the jury on the Consumer Fraud Act would have been improper and potentially confusing and misleading to the jury. See Gaido v. Weiser, 227 N.J. Super. 175, 201, 545 A.2d 1350 (App.Div. 1988), aff'd, 115 N.J. 310, 558 A.2d 845 (1989).
Beyond this, any error resulting from the jury charge on "quasi-contract" was harmless. The trial court declined to instruct the jury on unjust enrichment but later charged the jury on quantum meruit following Model Jury Charge § 4.5 (June 1971). This charge was provided to the court by defendant. Furthermore, by its own terms, the instruction to the jury only applied if plaintiff failed to substantially perform, and thereby defaulted on its contract. Here, the jury found that plaintiff had not breached its contract with defendant. Consequently, any error was not clearly capable of producing an unjust result.

III.
Finally, we are satisfied that the trial court properly denied defendant's motions for a judgment notwithstanding the verdict and a new trial. Defendant contends that the "trial court condoned the jury's apparent failure to follow or understand the jury charge that the extra work orders must be in writing signed by both parties." Further, defendant contends that the "trial court also erroneously permitted to stand the jury's apparent conclusion that substantial performance by [plaintiff] and the conduct of both parties were sufficient factors for [plaintiff] to be awarded damages even though the Act's [r]egulations require full performance and the delivery of the certificate of occupancy before final payment is due." Again, defendant inappropriately relies on the Consumer Fraud Act to overturn the judgment.

*266 A.
Preliminarily, we emphasize that a party who does not make a motion for judgment at the close of a case may not subsequently move for judgment notwithstanding the verdict. Surkis v. Strelecki, 114 N.J. Super. 596, 600, 277 A.2d 888 (App.Div.), certif. denied, 59 N.J. 266, 281 A.2d 528 (1971); Poland v. Parsekian, 81 N.J. Super. 395, 401-02, 195 A.2d 660 (App.Div. 1963), certif. denied, 41 N.J. 520, 197 A.2d 568 (1964). If a party fails to move for judgment prior to submitting the case to the jury or the jury verdict, a motion for judgment notwithstanding the verdict may still be sustainable where "an adequate substitute for the requisite trial motion" is made. Spaulding v. Hussain, 229 N.J. Super. 430, 441-42, 551 A.2d 1022 (App.Div. 1988); see, e.g., Menza v. Diamond Jim's, Inc., 145 N.J. Super. 40, 44, 366 A.2d 1006 (App.Div. 1976); Logan v. Township of N. Brunswick, 129 N.J. Super. 105, 108-09, 322 A.2d 467 (App.Div.), certif. denied, 66 N.J. 328, 331 A.2d 28 (1974); see also Hoke v. Pioneer State Bank, 167 N.J. Super. 410, 416, 400 A.2d 1217 (App.Div.), certif. denied, 81 N.J. 290, 405 A.2d 835 (1979); Pressler, Current N.J. Court Rules, comment on R. 4:40-2 at 984 (1992). Thus, a party is not procedurally barred from asserting a motion for judgment notwithstanding the verdict if the substitute or equivalent motion would have afforded the moving party the same relief the party seeks by way of the judgment notwithstanding the verdict.
As to a motion for judgment notwithstanding the verdict, R. 4:40-2 provides:
Reservation of Decision on Motion; Motion for Judgment Notwithstanding the Verdict
(a) Reservation of Decision. The court may reserve decision on a motion for judgment made at the close of all the evidence, submit the case to the jury and then decide the motion either before or within 10 days after the verdict, or if no verdict is returned, within 10 days after the jury's discharge. The court may enter judgment in accordance with the motion or in the interest of justice order a new trial.

*267 (b) Renewal of Motion. If a motion for judgment is denied and the case submitted to the jury, the motion may be renewed in accordance with the procedure prescribed by R. 4:49-1 (new trial) within 10 days after the verdict or the jury's discharge. A motion so renewed may include in the alternative a motion for a new trial, and every motion made by a party for a new trial shall be deemed to include, in the alternative, a renewal of any motion for judgment made by him at the close of the evidence. If the motion is granted on renewal thereof, the court shall nevertheless rule on the motion for a new trial determining whether it should be granted if the judgment is thereafter reversed or vacated. Briefs shall be submitted with the renewal of the motion for judgment. Failure to renew the motion shall not preclude appellate review of the denial of the motion made at trial.
(c) Motion of Party Aggrieved by Setting Aside. Within 10 days after the entry of an order setting aside a verdict or judgment under this rule, the party thereby aggrieved may move for a new trial or renew a motion for judgment made by him.
"The standard for granting judgment n.o.v. is relatively mechanical and does not involve the weighing of evidence." Malin v. Union Carbide Corp., 219 N.J. Super. 428, 435, 530 A.2d 794 (App.Div. 1987) (citing Johnson v. Salem Corp., 97 N.J. 78, 92, 477 A.2d 1246 (1984)). "The test for a motion under R. 4:40-2 (judgment notwithstanding the verdict) is the same as that governing motions under R. 4:37-2(b) (involuntary dismissal at the end of the plaintiff's case), and R. 4:40-1 (judgment after the close of evidence)." Malin v. Union Carbide Corp., supra, 219 N.J. Super. at 435-36, 530 A.2d 794; See Pressler, Current N.J. Court Rules, comment on R. 4:40-2 (1986). A motion for judgment notwithstanding the verdict must be denied
[I]f, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied. Bozza v. Vornado, Inc., 42 N.J. 355 [200 A.2d 777] (1964); Bell v. Eastern Beef Co., 42 N.J. 126 [199 A.2d 646] (1964); Franklin Discount Co. v. Ford, 27 N.J. 473, 490 [143 A.2d 161] (1958). The point is that the judicial function here is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion. [Dolson v. Anastasia, 55 N.J. 2, 5-6, 258 A.2d 706 (1969)].
Accord Stella v. Dean Witter Reynolds, 241 N.J. Super. 55, 79, 574 A.2d 468 (App.Div.), certif. denied, 122 N.J. 418, 585 A.2d *268 412 and 122 N.J. 419, 585 A.2d 413 (1990); Malin v. Union Carbide Corp., supra, 219 N.J. Super. at 436, 530 A.2d 794.
Thus, in considering a motion for such a judgment, the trial court should decide whether, viewing the evidence in the light most favorable to plaintiff, the jury might conclude that the plaintiff had proven the existence of a contract and that the defendant breached that contract and caused damages. If not, the court should grant the motion as a matter of law. R. 4:37-2(b). See Malin v. Union Carbide Corp., supra, 219 N.J. Super. at 436, 530 A.2d 794. Furthermore, as noted by our Supreme Court in Ferdinand v. Agricultural Ins. Co. of Watertown, N.Y., 22 N.J. 482, 126 A.2d 323 (1956), a motion for judgment depends on the credibility of witnesses:
Where men of reason and fairness may entertain differing views as to the truth of testimony, whether it be uncontradicted, uncontroverted or even undisputed, evidence of such a character is for the jury. But when the testimony of witnesses, interested in the event or otherwise, is clear and convincing, not incredible in the light of general knowledge and common experience, not extraordinary, not contradicted in any way by witnesses or circumstances and so plain and complete that disbelief of the story could not reasonably arise in the rational process of an ordinarily intelligent mind, then a question has been presented for the court to decide and not the jury. [Ferdinand, supra, 22 N.J. at 494, 126 A.2d 323 (citations omitted)].
Accord Johnson v. Salem Corp., 97 N.J. 78, 92-93, 477 A.2d 1246 (1984); Stella v. Dean Witter Reynolds, supra, 241 N.J. Super. at 79-80, 574 A.2d 468; Caliguire v. City of Union City, 104 N.J. Super. 210, 217, 249 A.2d 603 (App.Div. 1967), aff'd, 53 N.J. 182, 249 A.2d 577 (1969).
Here, defendant is procedurally barred from asserting a motion for judgment notwithstanding the verdict. Defendant failed to move for judgment prior to the jury's verdict. Moreover, even if defendant's motion for judgment notwithstanding the verdict were not procedurally barred, there was sufficient evidence adduced at trial to support a finding that defendant had breached her contract with plaintiff. Clearly, reasonable minds could differ as to whether defendant contracted with plaintiff for all the changes, proposals, invoices and work performed. Consequently, defendant's motion for judgment *269 notwithstanding the verdict was properly denied by the trial court.

B.
Alternatively, defendant contends that the verdict was against the weight of the evidence and, therefore, the trial court should have granted a new trial. Pursuant to R. 4:49-1(a), a trial court may grant a motion for a new trial "if, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." In Dolson v. Anastasia, the Supreme Court described the process the trial court is to undertake in evaluating such motions:
A process of evidence evaluation,  "weighing" , is involved, which is hard indeed to express in words. This is not a pro forma exercise, but calls for a high degree of conscientious effort and diligent scrutiny. The object is to correct clear error or mistake by the jury. [Dolson v. Anastasia, supra, 55 N.J. at 6, 258 A.2d 706.]
Applying this standard, we are satisfied from our review of the record that it does not clearly and convincingly appear that there was a miscarriage of justice under the law. See R. 2:10-1; Dolson v. Anastasia, supra, 55 N.J. at 6-7, 258 A.2d 706.
Accordingly, the judgment and order under review are affirmed.