**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1841-18T2

BRENDA GILBERT,

 Plaintiff-Appellant,

v.

KENYATTA K. STEWART, ESQ.,
HUNT, HAMLIN & RIDLEY,
and JAMES A. ADDIS, ESQ.,

 Defendants-Respondents,

and

STATE OF NEW JERSEY
JUDICIARY, PASSAIC COUNTY
VICINAGE PROBATION
DEPARTMENT, and MONROE
GILBERT,

 Defendants.

_____

Submitted November 6, 2019 - Decided July 28, 2020

Before Judges Accurso and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3459-16.

Hegge & Confusione, LLC, attorneys for appellant (Michael James Confusione, of counsel and on the brief).

Juliana E. Blackburn, attorney for respondents Kenyatta K. Steward, Esq. and Hunt, Hamlin & Ridley.

Connell Foley LLP, attorneys for respondent James A. Addis, Esq. (Karen Painter Randall, of counsel; Steven A. Kroll, of counsel and on the brief; Andrew C. Sayles, on the brief).

PER CURIAM

Plaintiff Brenda Gilbert appeals from the entry of summary judgment dismissing her complaint for legal malpractice against two former lawyers, defendants Kenyatta K. Stewart and his firm Hunt, Hamlin & Ridley and James A. Addis. Because the facts are not in dispute, and we agree defendants were entitled to judgment as a matter of law, we affirm.

Plaintiff divorced her husband Monroe in 2006. Monroe got the family Ford Explorer, which he was supposed to register in his own name. In 2016, Monroe told plaintiff he had racked up a number of parking tickets on the Explorer, which was still registered to plaintiff, and asked her to accompany him to a municipal court hearing. Although the violation notices had been

mailed to plaintiff's home, Monroe admitted using his keys to remove the notices before plaintiff saw them.

When plaintiff arrived at the municipal court, she met Monroe and defendant Stewart, a friend of the couple's son, who was representing Monroe. The case was called, but the hearing adjourned until the following week. In the interim, Stewart convinced plaintiff to plead guilty because of Monroe's "terrible driving record," which would likely result in his receiving "severe penalties." Stewart represented that the judge "would probably impose" only minimal fines on her, "for which his client, Monroe, would indemnify her." Stewart did not advise plaintiff about the effect such a guilty plea might have on her job as a probation supervisor in the Judiciary.

Plaintiff has been employed by the State in the Passaic probation department since 1994. She began as an investigator and was promoted to a probation officer, a senior probation officer and, finally, a probation supervisor. During her tenure, plaintiff regularly acknowledged receipt of Judiciary policy and procedures, which require all Judiciary employees to "immediately report" any personal involvement in any criminal or quasi-criminal matter, whether in state, federal or municipal court, commencing on

"being formally charged, indicted, summoned or upon the filing of a complaint or other document" initiating the court's jurisdiction.

On the adjourned date, defendant Stewart advised the court he represented both Monroe and plaintiff, which plaintiff claimed was not true, as she never retained Stewart. Plaintiff pleaded guilty to the motor vehicle violations, which the judge described as "like a book of parking tickets," the most she had "seen in [her] 15 years on the bench." The judge imposed probation, fines, and community service.

When Stewart asked whether plaintiff could perform the community service through her church, the judge explained that plaintiff would "be contacted by probation." Stewart explained that plaintiff "actually works for probation," prompting the judge to ask whether plaintiff could "put [herself] in a church." When plaintiff responded affirmatively, the judge said she would "make a note, no objection."

Following her plea, plaintiff advised her supervisor of the municipal court action. The Judiciary responded by charging her with insubordination; conduct unbecoming a public employee; neglect of duty; misuse of public

property, including motor vehicles[1]; and violating Judiciary policy on reporting involvement in litigation; and Canons 1 and 4 of the Judiciary Code of Conduct. The Passaic vicinage's human resource manager advised plaintiff in writing that the vicinage was seeking her removal, and she was immediately suspended without pay.

Plaintiff hired new counsel to file a petition for post-conviction relief in connection with the municipal court matter. She hired a different lawyer, defendant Addis, to represent her in her disciplinary proceeding. While her PCR petition was pending, the Judiciary presented her with what she admits was a "take it or leave it" deal to save her job.

The settlement required plaintiff to admit to the charges of conduct unbecoming, neglect of duty, and other sufficient cause. The Judiciary would dismiss the remaining charges, the fifty days of suspension plaintiff had already served would remain without pay and considered part of the discipline imposed, and plaintiff would have to accept a demotion to senior probation officer. She would also have to release the Judiciary from any and all claims

---

[1] The human resources manager testified at deposition that he reviewed plaintiff's driver's abstract in the course of his investigation, and learned that plaintiff had requisitioned a State car on three occasions in 2013 when her license was under suspension.

A-1841-18T2

arising out of the matter and her employment generally, including her rights under eleven specifically named statutes, including the Age Discrimination in Employment Act. The settlement also required both parties to waive any right to appeal.

Plaintiff was not happy with the terms and did not want to sign the agreement. Her disciplinary hearing, however, had already been adjourned once at her request and neither the hearing officer nor the Judiciary would consent to further adjournment to allow plaintiff's PCR petition to be decided. Addis recommended that plaintiff sign the agreement, advising she could lose her job and her pension were she to fight the discipline and lose. Plaintiff signed the agreement on the adjourned hearing date, later testifying at deposition that she did so only because one of her children was ill, and she desperately needed to reinstate the health insurance benefits she had been deprived of during her suspension. Addis immediately telefaxed the agreement to the human resources manager and the hearing officer. In his letter to the hearing officer, Addis wrote that the settlement agreement obviated the necessity of a hearing and thanked him "again for permitting us the extra time needed this morning to complete the agreement."

A-1841-18T2

Two days after she signed the settlement, plaintiff appeared in Addis' office saying she had changed her mind and directed him to rescind it. Addis told plaintiff "it was too late," and if she wanted to pursue that course, she would have to hire somebody else. The retainer agreement plaintiff signed with Addis provided that the firm would not, and could not "be forced to pursue frivolous actions or actions . . . not substantiated by valid facts or viable tenets of law."

Plaintiff hired yet another lawyer to appeal the discipline. The Civil Service Commission declined to review the matter. Plaintiff's PCR petition, however, was completely successful; all charges were dismissed, and her fines and court costs were refunded to her.

Defendant Stewart faced disciplinary charges in connection with his representation of defendant and her ex-husband in municipal court based on his dual representation and the conflict of interest it engendered. Although the District Ethics Committee, after investigation and formal complaint, agreed to submit a joint motion with Stewart to permit an admonition by consent, the Disciplinary Review Board denied the motion. The Board, expressing concern that Stewart "may have disadvantaged [plaintiff] in favor of Monroe," thus elevating "the interests of one client (Monroe) over those of another

 A-1841-18T2

([plaintiff])," denied the motion and remanded the matter to the District Ethics Committee to review the municipal court transcripts and engage in further proceedings to address the Board's concerns. The record does not reflect the final resolution of those disciplinary proceedings.

After hearing argument on the motions, the Law Division granted summary judgment to both defendants. As to defendant Stewart, the judge found a breach of duty by Stewart's dual representation, but concluded the breach was not the proximate cause of the harm plaintiff claims to have suffered. The judge found defendant Addis breached no duty to plaintiff.

Plaintiff appeals, asserting the trial judge erred in dismissing her claims, contending a reasonable jury could determine that both defendants were negligent, and "that this caused harm to plaintiff." We do not accept that a reasonable jury could find for plaintiff on this record.

As the parties agree that there was no dispute as to the material facts, our task is limited to determining whether the trial judge's ruling on the applicable law was correct. Walker v. Atl. Chrysler Plymouth, Inc., 216 N.J. Super. 255, 258 (App. Div. 1987). In order to survive summary judgment, plaintiff had to establish

> that competent, credible evidence existed to support each of the elements of [her] negligence action, i.e.,

A-1841-18T2

"1) the existence of an attorney-client relationship creating a duty of care upon the attorney; 2) that the attorney breached the duty owed; 3) that the breach was the proximate cause of any damages sustained; and 4) that actual damages were incurred."

[Cortez v. Gindhart, 435 N.J. Super. 589, 598 (App. Div. 2014) (quoting Sommers v. McKinney, 287 N.J. Super. 1, 9-10 (App. Div. 1996)).]

Plaintiff's cause of action as to Stewart foundered on the third element, proximate cause. Plaintiff claims a reasonable jury could conclude that but for Stewart's unethical conduct, she would not have faced discipline by her employer. "There would have been no convictions for plaintiff to have to report to her employer" had Stewart "not purported to represent her, not violated conflict of interest rules, [and] not misadvised her about the consequences." Plaintiff claims she "would not have pleaded guilty to something she did not do but for Stewart's urging of her to 'take the fall.'"

Plaintiff, however, ignores the court's critical finding that "[t]he only testimony in this case as to the reason . . . [plaintiff] was demoted was because of her lack of candor in not reporting the ticket[s] in the first place." Plaintiff admitted she did not report her involvement in the municipal court matter when Monroe first advised her of the tickets and the court hearing. Plaintiff also admitted she didn't report the matter after her first appearance when the

municipal court judge advised her of the charges against her. It is undisputed that she did not report the matter until after the case was over, contrary to established Judiciary policy of which she was well aware.

The vicinage's human resource manager testified unequivocally that the Judiciary's concern was not the guilty pleas, and that "those municipal court tickets were not the focus of [its] disciplinary action against her." Accordingly, the court was correct to conclude the record was clear that it was not anything Stewart did that prompted the disciplinary charges against plaintiff. Instead, as the court found on the undisputed facts, plaintiff faced disciplinary charges "because of her lack of candor in not reporting the ticket[s] in the first place." A rational jury could not find otherwise given the undisputed facts. See Conklin v. Hannoch Weisman, 145 N.J. 395, 422 (1996) (explaining that to prevail on a legal malpractice claim alleging incompetent advice that plaintiff must establish "the negligence was a substantial factor in bringing about the ultimate harm").

As to defendant Addis, plaintiff argues he was negligent for failing to defend plaintiff against the disciplinary charges, for counseling her to accept the settlement, for failing to ensure that her consent was knowing and voluntary, for failing to include a revocation period in the agreement,

10

notwithstanding that it included a waiver of ADEA[2] claims, and for failing to pursue rescission when plaintiff directed him to. None of those claims has merit.

Plaintiff testified unequivocally at deposition, and admitted on the motion, that she signed the agreement voluntarily, fully understanding its terms, and that she did so because she needed to restore her insurance benefits. There is nothing in the record to the contrary. Thus, plaintiff's claims as to Addis' failure to defend her against the disciplinary charges, his advice in recommending settlement and in failing to ensure her consent was voluntary are without basis.

As for plaintiff's claim that Addis was negligent in failing to include a period of time for plaintiff to revoke her acceptance of the agreement, there is nothing in the record to support that the Judiciary would have agreed to such a term in the absence of an ADEA claim plaintiff admits she did not bring. Indeed, the human resource manager, who drafted the agreement, testified he would never have agreed to include a revocation period in the agreement.

---

[2] Section 626 of the ADEA provides that a waiver of the rights secured by the Act will not be considered voluntary unless the person signing the agreement is provided at least twenty-one days to consider it and seven days following execution to revoke it. 29 U.S.C. § 626(f)(1)(F)(i), (f)(1)(G).

Plaintiff cannot assert her lawyer was negligent for failing to include a term in a contract she cannot establish the other party would have accepted. <u>See</u> <u>Froom v. Perel</u>, 377 N.J. Super. 298, 315 (App. Div. 2005).

Finally, there is no legal basis for plaintiff's claim that Addis was negligent for failing to attempt to revoke the agreement. Settlement agreements are enforceable in New Jersey just as any other contract. <u>Thompson v. City of Atl. City</u>, 190 N.J. 359, 379 (2007). As was undisputed on the motion record, plaintiff was presented with a "take it or leave it" deal to save her job. The vicinage's human resource manager testified it was "as good as it was gonna get." Accordingly, plaintiff's signature on the document represented an "unconditional written acceptance" of the terms. <u>See</u> <u>Morton v. 4 Orchard Land Tr.</u>, 180 N.J. 118, 129 (2004). We agree with the trial judge that Addis could not be negligent as a matter of law for failing to attempt to rescind what was obviously a binding agreement on the facts.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1841-18T2