**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1911-17T1

SCOTT DIROMA,

    Plaintiff-Appellant,

v.

SHARON LONGINETTI,

    Defendant-Respondent.

_____

Argued October 24, 2018 – Decided November 5, 2018

Before Judges Nugent and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Special Civil Part, Passaic County, Docket No. DC-003755-17.

Scott DiRoma, appellant, argued the cause pro se.

Christopher C. Josephson, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Christopher C. Josephson, on the brief).

PER CURIAM

Plaintiff Scott DiRoma appeals from a November 9, 2017 order granting defendant Sharon Longinetti summary judgment dismissing DiRoma's defamation complaint. We affirm.

The following facts are taken from the record. In 2008, DiRoma was convicted of first-degree armed robbery, second-degree eluding a law enforcement officer, fourth-degree unlawful possession of an imitation firearm, and two counts of fourth-degree resisting arrest. DiRoma was sentenced to five years in prison subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, and five years of mandatory parole supervision upon release from prison.

DiRoma's convictions and sentence arose from two incidents, which led him to enter a plea under two indictments. The first incident occurred in November 2008, when police arrested DiRoma after he attempted to flee from them in a stolen vehicle. Police searched the vehicle and seized a backpack containing bolt cutters, a flat pry bar, a screwdriver multi-tool, and an adjustable wrench. As a result, DiRoma was charged with eluding, resisting arrest, receiving stolen property, and possession of burglary tools.

In March 2009, DiRoma entered a bowling alley in Green Brook brandishing an imitation firearm and ordered the manager to open the safe. He left with a large sum of money and attempted to flee the police, but was

apprehended, arrested, and charged with armed robbery, unlawful possession of a firearm, and resisting arrest. DiRoma's plea and sentence followed.

DiRoma was released from prison in May 2013. On April 1, 2016, a parole officer visited DiRoma's residence and discovered an air pump wedge-type locksmith tool on his bed. The officer confiscated the locksmith tool after conferring with his supervisor, Longinetti. On April 7, 2016, the officer visited DiRoma's residence and confiscated other tools commonly used to commit burglary, namely, three metallic tools with hooks (Slim Jims), nine metallic rods with hooks, and one plastic wedge.

DiRoma met with his parole officer and Longinetti at the Newark parole office on April 7, 2016. Longinetti advised DiRoma the tools were confiscated because DiRoma had "a history of burglary." Longinetti sent DiRoma an email the following day, in pertinent part, advising:

> I told you the tools were confiscated, specifically an AIR WEDGE HUK lock pick, [three] Slim Jims, [nine] metal rods with hooks and one plastic wedge, were taken due to the fact that I had made a determination that they are detrimental to your rehabilitation . . . due to the fact that your criminal history includes arrests for [r]obbery, [b]urglary[,] and [p]ossession of [b]urglary [t]ools[,] and the confiscated tools could be used to commit burglaries. In addition, when you were asked by parole officers the reason for possessing such tools, you could not offer a valid explanation, in that your first

response was "I'm the kind of guy that likes tools," and your response was to offer no explanation.

On August 23, 2016, the Division of Parole (Division) imposed a special condition on DiRoma which prohibited him from "possessing burglary tools such as Slim Jims, metal rods with hooks at the end, lockpick wedges or similar such tools or devices." The Division concluded "DiRoma ha[d] a history of [b]urglary, [r]obbery, and being in possession of [b]urglary [t]ools[.] [T]herefore[,] these tools are deemed detrimental to DiRoma's rehabilitation."

In April 2017, DiRoma filed a Law Division complaint alleging defamation against Longinetti. Specifically, the complaint alleged Longinetti's statement DiRoma had a "history of burglary" was false and defamatory. The complaint also alleged DiRoma was damaged because Longinetti's statement was in part "justification for [the Board's imposition of] special conditions" on him. The complaint alleged that as a result DiRoma was "subject to increased monitoring by the . . . [parole] [b]oard, causing [him] embarrassment and distress." The complaint further alleged Longinetti's statement deprived him of his property, namely, the confiscated tools.

Following the filing of her answer, Longinetti filed a motion for summary judgment. The motion judge granted the motion concluding Longinetti's statement was substantially true because DiRoma had been charged with a

4

higher graded crime than burglary, namely, robbery. The judge also noted DiRoma had been previously charged with possession of burglary tools. This appeal followed.

Our review of an order granting summary judgment is de novo. Graziano v. Grant, 326 N.J. Super. 328, 338 (App. Div. 1999). "[W]e review the trial court's grant of summary judgment . . . under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). The court considers all of the evidence submitted "in the light most favorable to the non-moving party," and determines if the moving party is entitled to summary judgment as a matter of law. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). The court may not weigh the evidence and determine the truth of the matter. Ibid. If the evidence presented "show[s] that there is no real material issue, then summary judgment should be granted." Walker v. Atl. Chrysler Plymouth, Inc., 216 N.J. Super. 255, 258 (App. Div. 1987) (citing Judson v. Peoples Bank & Tr. Co. of Westfield, 17 N.J. 67, 75 (1954)). "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome [summary judgment]." Puder v. Buechel, 183 N.J. 428, 440-41 (2005).

On appeal, DiRoma argues the motion judge provided insufficient reasoning to dismiss his complaint. He argues Longinetti's statement was defamatory because he was never convicted of burglary or the possession of burglary tools. Plaintiff also seeks the assignment of his case to a different judge in the event of remand because he asserts the motion judge was committed to his findings.

> To succeed in [a] defamation action, [a plaintiff] must prove three essential facts: (1) that defendant[] made a false and defamatory statement concerning [the plaintiff]; (2) that the statement was communicated to another person (and not privileged); and (3) that defendant[] acted negligently or with actual malice. See DeAngelis v. Hill, 180 N.J. 1, 13 (2004). . . .
>
> A defamatory statement, generally, is one that subjects an individual to contempt or ridicule, Id. at 13-14 (citing Lawrence v. Bauer Publ'g & Printing Ltd., 89 N.J. 451, 459 (1982)), one that harms a person's reputation by lowering the community's estimation of him or by deterring others from wanting to associate or deal with him, Ward v. Zelikovsky, 136 N.J. 516, 529 (1994) (citing Restatement (Second) of Torts § 559 (1977)). To determine whether a statement is defamatory, a court looks "to the fair and natural meaning [to be given to the statement] by reasonable persons of ordinary intelligence." Romaine v. Kallinger, 109 N.J. 282, 290 (1988) (quotation omitted). A statement falsely attributing criminality to an individual is defamatory as a matter of law. Id. at 291 (citations omitted).
>
> . . . .

6

In a defamation action, truth is not only a common-law defense, but also "absolutely protected under the First Amendment." Ward, 136 N.J. at 530, 643 (citation omitted); see also Senna v. Florimont, 196 N.J. 469, 496 (2008) (noting that under either actual-malice or negligence standard, truth is defense of constitutional magnitude in defamation case). Truth may be asserted as a defense even when a statement is not perfectly accurate.

The law of defamation overlooks minor inaccuracies, focusing instead on "substantial truth." Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 516 (1991). . . . A court must consider a statement as a whole to determine the impression it will make on a reader. "Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" Masson, 501 U.S. at 517 (citations omitted)[.]

[G.D. v. Kenny, 205 N.J. 275, 292-94 (2011).]

Summary judgment in Longinetti's favor was properly granted because her statement DiRoma had a history of burglary was substantially true and therefore not defamatory. DiRoma's criminal history included a first-degree armed robbery conviction, which is a higher degree crime than burglary. Indeed, pursuant to N.J.S.A. 2C:18-2(b), burglary is ordinarily a third-degree crime and cannot exceed a second-degree offense.

Longinetti's statement was not defamatory because it did not damage DiRoma's reputation as both Longinetti and the other Parole Board employees

had knowledge of his criminal history. Moreover, DiRoma was not damaged by the Board's imposition of special conditions because, regardless of Longinetti's statement, there was an independent basis for the imposition of special conditions based on the discovery of the tools and DiRoma's criminal record. Indeed, DiRoma provided no valid reason for possession of the tools confiscated from his bedroom. As the Board's decision noted, DiRoma was a grocery store employee, and was enrolled in college computer science courses. As a result, the Board stated:

> The Board finds that nothing in the record suggests that you have engaged in any type of legitimate "mechanical work" while under supervision and that your employment is at [a grocery store]. Additionally, the Board finds that your chosen course of study while attending school was computer science, a field that does not require the use of such tools. Therefore, the Board finds your contention to be without merit.

We agree. The Board had a clear basis on which to impose special conditions, and confiscate DiRoma's tools. N.J.A.C. 10A:71-6.4 states:

> (a) An offender granted parole shall comply with the following general conditions of parole:
>
> . . . .
>
> (19) Submit to a search conducted by a parole officer, without a warrant of the offender's . . . place of residence . . . within the offender's control at any time a parole officer has a reasonable, articulable basis to

> believe that the search will produce contraband . . . and permit the confiscation of any contraband.

Under this regulation, the Board's valid actions did not damage DiRoma.

Finally, we note DiRoma was previously charged with possession of burglary tools, and his parole officer subsequently found him in possession of burglary tools. Contrary to DiRoma's argument, we do not consider the link between the prior charge and the subsequent discovery of these tools to be so attenuated. Therefore, summary judgment in Longinetti's favor was appropriate.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION