**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3015-16T4
     A-1894-17T4
     A-0674-18T4

LAMBS LANE REALTY, LLC,
LAWRENCE FEROLIE, JR., and
ELIA BORELLI FEROLIE,

   Plaintiffs-Appellants,

v.

LAKELAND BANK,

   Defendant-Respondent.

_____

LAKELAND BANK,

   Plaintiff-Respondent,

v.

LAMBS LANE REALTY, LLC,
LAWRENCE FEROLIE, JR., and
ELLA BORELLI FEROLIE,

   Defendants-Appellants,

and

STATE OF NEW JERSEY,

      Defendant.

_____

LAKELAND BANK,

      Plaintiff-Respondent,

v.

LAMBS LANE REALTY, LLC,
LAWRENCE FEROLIE, JR., and
ELIA BORELLI FEROLIE,

      Defendants-Appellants.

_____

      Argued March 6, 2019 – Decided April 4, 2019

      Before Judges Koblitz, Currier and Mayer.

      On appeal from Superior Court of New Jersey, Chancery Division, Bergen County, Docket Nos. C-000016-17 and F-001856-17; and Law Division, Passaic County, Docket No. L-0249-17.

      Arthur L. Porter, Jr. argued the cause for appellants (Fischer Porter & Thomas, PC, attorneys; Arthur L. Porter, Jr., of counsel; Aaron E. Albert, on the briefs).

      Michael P. Crowley argued the cause for respondent (Riker Danzig Scherer Hyland & Perretti, LLP, attorneys; Michael R. O'Donnell, of counsel and on the briefs; Michael P. Crowley, on the briefs).

PER CURIAM

A-3015-16T4

Appellants[1] Lambs Lane Realty, LLC (Lambs Lane), Lawrence Ferolie, Jr., and Elia Borelli Ferolie (Ferolies) appeal from the following: a February 21, 2017 order granting a motion filed by respondent Lakeland Bank (Bank) dismissing appellants' claims in the Chancery Division, Bergen County, Docket No. C-000016-17 (Chancery action); a September 29, 2017 order granting summary judgment in favor of the Bank in a foreclosure action filed in the Chancery Division, Bergen County, Docket No. F-100856-17 (foreclosure action); and a June 22, 2018 order granting reconsideration and summary judgment in favor of the Bank in the Law Division, Passaic County, Docket No. L-0249-17 (action on the note). We affirm all three orders.

We summarize the facts pertinent to the three actions. In May 2007, the Bank issued a commitment letter to appellants for a $3 million loan. Appellants intended to use $1.5 million to construct a home on 22 Lambs Lane. On June 26, 2007, prior to executing any loan documents, the Bank provided appellants

---

[1] Because Lambs Lane and the Ferolies were both plaintiffs and defendants in the various actions, we refer to them as appellants although we traditionally denote the parties by their status before the trial court. The corporate entity, Lambs Lane, owned vacant property at 22 Lambs Lane. The Ferolies owned a home located at 20 Lambs Lane.

A-3015-16T4

with appraisals for the collateralized properties.[2]  The appraisal for 20 Lambs Lane estimated the value of the land with the existing structure at $1.5 million. The appraisals for 22 Lambs Lane estimate the value of the land as vacant at $650,000 and the value with a newly constructed home at $2 million.

The loan closed in November 2007.  Due to various construction delays, appellants requested and received multiple extensions of the loan's original maturity date.[3]

On March 1, 2012, the parties agreed to restructure the 2007 loan. Appellants signed a note promising to repay the loan by March 15, 2013. Appellants also executed a mortgage in favor of the Bank, "covering premises at 22 Lambs Lane[.]"  The Ferolies executed a guaranty, assuring the financial obligations under the note and mortgage.

In accordance with the terms of the restructured loan, the failure to pay all sums due by March 15, 2013 constituted an event of default.  The parties extended the maturity date on the restructured loan eight times, with the last extension requiring full payment by June 15, 2016.  Each signed loan extension

---

[2]  The collateralized properties included 20 Lambs Lane, the lot with an existing home occupied by the Ferolies, and 22 Lambs Lane, the lot on which a new home would be built.

[3]  The original maturity date was June 1, 2009.

agreement required appellants to release any claims against the Bank. Before signing each loan extension agreement, Mr. Ferolie testified he read the document and obtained legal advice from counsel.

Appellants defaulted on June 15, 2016, and the Bank sent a notice of intention to foreclose on November 17, 2016. Thereafter, the parties attempted to negotiate a forbearance agreement but they were unable to agree on material terms to execute a forbearance agreement.

Knowing a foreclosure action was likely to be filed by the Bank, appellants preemptively filed the Chancery action. In that action, appellants sued the Bank, asserting breach of contract and breach of the covenant of good faith and fair dealing. In addition, appellants demanded injunctive relief to bar the filing of a foreclosure action by the Bank. Appellants also requested the parties be compelled to participate in mediation to achieve a forbearance agreement. After appellants instituted the Chancery action, the Bank filed the foreclosure action and the action on the note.

The Bank also moved to dismiss the Chancery action. The Bank contended appellants' claims in the Chancery action could and should be raised in the foreclosure action. The Chancery judge agreed and issued a February 21, 2017 order dismissing the Chancery action without prejudice.

5

The judge found appellants' claims in the Chancery action were germane to the foreclosure action. The judge concluded that if he were "to refrain from dismissing [appellants'] complaint, the entire controversy doctrine would likely bar [appellants] from raising their claims in the foreclosure action." The judge also rejected appellants' request to consolidate the Chancery action with the foreclosure action, finding appellants failed "to explain the need for the continued existence of [the Chancery action] in addition to the foreclosure action where [appellants] may raise all their claims." The judge held "it is inconsistent with the policies underlying the entire controversy doctrine to allow [appellants] to proceed with this duplicative litigation. The subject matter of the dispute between the parties involves an already-begun foreclosure proceeding, where [appellants'] claims may be fully and fairly litigated."

After the exchange of discovery in the foreclosure action, the Bank moved for summary judgment, which appellants opposed. Appellants argued the Bank's 2007 appraisals hid the true value of the properties. According to appellants, the Bank's appraisals overvalued the properties and induced them to borrow more than the properties were worth. Appellants also claimed the parties entered into a binding forbearance agreement in December 2016, precluding foreclosure by the Bank.

6

On September 29, 2017, the foreclosure judge issued a written opinion, dismissing appellants' answer and counterclaim and deeming the foreclosure action uncontested. The judge rejected appellants' claim that the loan extensions were unconscionable or constituted economic duress. The judge noted Mr. Ferolie "testified that he read the provision of the agreements before signing and that he was represented by counsel when he executed each of the eight extensions."

The judge also rejected appellants' argument that the default was caused by the Bank's wrongful conduct. Relying on United Jersey Bank v. Kensey, 306 N.J. Super. 540, 558 (App. Div. 1997), the judge concluded the Bank owed no duty to disclose to appellants how it internally analyzed and underwrote the loan in determining the amount the Bank was willing to lend. The judge found appellants had the ability to obtain their own valuation of the properties. He further noted appellants were represented by counsel when the loan extension agreements were executed and could have challenged the Bank's appraisals or the loan agreement instead of signing the extension agreements.

The judge also found the parties failed to reach an agreement as to the essential terms of a forbearance agreement. Based on the parties' emails and drafts of the forbearance agreement, the judge determined there was no meeting

7

of the minds on an agreement. The judge explained there were essential terms required by the Bank as part of a forbearance agreement, including a deed in lieu of foreclosure and appellants' waiver of all claims, and appellants never agreed to those terms.

In dismissing appellants' counterclaim against the Bank for breach of contract of good faith and fair dealing, the judge explained there was "insufficient evidence to substantiate these claims." He concluded appellants were "represented by counsel, . . . had the appraisal as early as 2007 but did not challenge [the Bank's] loan agreement," and "signed eight extensions of the loan agreement, each of which released the [Bank] from any and all claims relating to the loan."

Thereafter, the Bank applied for the entry of a final judgment of foreclosure, which appellants did not oppose. The final judgment of foreclosure was entered on December 20, 2017.

While the foreclosure action was pending in Bergen County, the parties litigated the action on the note in Passaic County. In November 2017, the Bank moved for summary judgment in that matter. In opposing the motion, appellants argued the Bank was not entitled to foreclose because the parties reached a forbearance agreement in December 2016. In addition, appellants claimed the

Bank concealed its overvaluation of the collateralized properties in the 2007 appraisals. These were the same arguments raised by appellants and dismissed in the foreclosure action.

On December 14, 2017, the judge in the action on the note heard argument on the Bank's motion. Five months later, in a May 16, 2018 order and accompanying written decision, the judge denied the motion. The judge determined the Bank's lawsuit to collect on the note was barred by res judicata, holding:

> the summary judgment opinion from the foreclosure action dealt with the same causes of action and claims at issue before this court in the present action. These issues include: unconscionable loan extensions, deceitful behavior, contracts of adhesion, the existence of a forbearance agreement, breach of contract, breach of the covenant of good faith and fair dealing and rescission. Thus, all three elements of res judicata have been met. First, a valid final judgment was entered in an action prior to the one before this court. Second, all the parties in the current action were also parties to the foreclosure action in Bergen County. Third, the action pending before the Passaic County Law Division stems from the same transaction or occurrence and has the same claims as the foreclosure action in Bergen County.

The Bank filed a motion for reconsideration, clarifying that it prevailed in the foreclosure action and explaining all of the issues identified by the judge had been resolved in the foreclosure action but a final judgment of foreclosure had

not been issued when the parties argued the motion in December 2017.[4] Therefore, the Bank argued it was entitled to summary judgment on res judicata grounds because the same issues involving the same parties were resolved in its favor in the foreclosure action.

During argument on the reconsideration motion, the judge acknowledged his error concerning the procedural posture of the case. The judge explained, "[i]t didn't strike me that this was actually the action on the note . . . and I guess I should have known[.]" The judge reviewed the rulings made by the Bergen County judge who handled the foreclosure action and relied on those rulings in granting the Bank's motion for reconsideration and summary judgment in the action on the note. He concluded the only issue not decided by the foreclosure judge was the amount due to the Bank under the note and guaranty. The judge found appellants did not dispute the amount due on the note and the only outstanding issue was the amount of attorneys' fees allowable under the guaranty.

By order dated June 22, 2018, the judge granted the Bank's motion for summary judgment in the amount of $1,597,649.36. The order allowed the Bank

---

[4] The final judgment in the foreclosure action was issued six days after oral argument on the Bank's summary judgment motion in the action on the note.

to submit a certification seeking attorneys' fees. In a September 10, 2018 amended order, the judge awarded the Bank the sum of $1,885,190.95, inclusive of attorneys' fees.

Appellants appealed the final orders from the Chancery action, the foreclosure action, and the action on the note.

In their appeal regarding the Chancery action, appellants assert the trial judge abused his discretion in dismissing their claims. Appellants also contend their claims in that action were adequately pled. Because appellants' claims in the Chancery action were fully litigated and addressed in the foreclosure action, we find the arguments on appeal related to the Chancery action are without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

In the appeal related to the foreclosure action,[5] appellants argue summary judgment should not have been granted because: (1) the Bank included unconscionable provisions in the loan extension agreements; (2) the default on the loan was attributable to the Bank's bad faith conduct; and (3) the Bank breached the forbearance agreement.

---

[5] Appellants are not challenging the Bank's right to file a foreclosure action.

In the appeal from the final judgment in the action on the note, appellants argue: (1) there were genuine material factual disputes precluding summary judgment; (2) the Bank's conduct caused appellants to default; (3) the Bank concealed its mistake in calculating the loan-to-value assessment for the properties; (4) the Bank violated its fiduciary duty to appellants as well as the covenant of good faith and fair dealing; (5) the release language in the loan extension agreements was unconscionable and rendered the agreements void; and (6) the parties agreed to the essential terms of a forbearance agreement.

We review a grant of summary judgment de novo, applying the same standard as the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). Summary judgment may be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46–2(c).

In determining whether there is a genuine issue of material fact, courts "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-

moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). If the evidence presented "show[s] that there is no real material issue, then summary judgment should be granted." Walker v. Atl. Chrysler Plymouth, Inc., 216 N.J. Super. 255, 258 (App. Div. 1987).

We first review appellants' argument that the loan extension agreements are unconscionable and thus void. Appellants based their unconscionability claim on the following: the Bank's requirement in the loan extension agreements that appellants waive all claims against the Bank; the Bank took advantage of appellants' legal naivety; and the loan extension agreements were contracts of adhesion.

To successfully plead unconscionability as a defense, a defendant must prove the contract "terms are manifestly unfair or oppressive and are dictated by a dominant party." Howard v. Diolosa, 241 N.J. Super. 222, 230 (App. Div. 1990). A defendant must demonstrate "some overreaching or imposition resulting from a bargaining disparity between the parties, or such patent unfairness in the contract that no reasonable person not acting under compulsion or out of necessity would accept its terms." Ibid.

"There is of course an element of compulsion anytime a creditor asks a debtor in default to agree to anything; the creditor holds the upper hand."

Glenfed Fin. Corp. v. Penick Corp., 276 N.J. Super. 163, 174 (App. Div. 1994). However, requiring a debtor to agree to changes in the agreement when the creditor exercises its right "to declare a loan in default or to forbear from taking such action" is not "'wrongful conduct' . . . [and] does not constitute economic duress." Ibid.

Here, appellants admit borrowing the money, executing the loan documents, defaulting on the loan, and asking the Bank, on eight separate occasions, for extensions of time to repay the loan. The loan extensions were granted by the Bank to allow appellants to pay the loan and avoid foreclosure. This case reflects a traditional relationship between a lender and a borrower. Based on that relationship, there is nothing unfair or oppressive in the Bank's request that appellants waive any claims against it in return for the numerous loan extensions.

Appellants have also failed to demonstrate how the waiver of their claims against the Bank under these circumstances was patently unfair or unconscionable. The Bank had the legal right to declare appellants in default under the loan documents and had no obligation to agree to any loan extensions. Moreover, Mr. Ferolie testified he read the provisions in the loan extension

14

agreements and sought the advice of legal counsel before signing each extension agreement.

We next consider appellants' contention that the loan extension agreements are contracts of adhesion and therefore unenforceable.  A contract of adhesion "is a contract 'presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity of the "adhering" party to negotiate except perhaps on a few particulars.'"  Martindale v. Sandivik, Inc., 173 N.J. 76, 89 (2002) (quoting Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353 (1992)).  Even if an agreement constitutes a contract of adhesion, the contract is not automatically void.  See Rodriguez v. Raymours Furniture Co., Inc., 225 N.J. 343, 366-67 (2016).  When considering whether to enforce the provisions in a contract of adhesion,

> courts must look not only to the standardized nature of the contract, 'but also to the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the "adhering" party, and the public interests affected by the contract.'
>
> [Martindale, 173 N.J. at 90 (quoting Rudbart, 127 N.J. at 356).]

In this case, appellants were not coerced into signing the eight loan extension agreements.  The Bank agreed to delay declaring default of the loan

and to the loan extension agreements so appellants could sell the newly constructed home and pay the loan obligation. Both parties benefited from the loan extension agreements. Appellants bargained for and received additional time to pay their financial obligations in return for the Bank's agreement to delay declaring default and filing for foreclosure. Appellants present no evidence that enforcement of the loan extension agreements implicates a matter of public policy. In addition, appellants had legal counsel when Mr. Ferolie signed the loan extension agreements. Under the circumstances, we are satisfied the loan extension agreements were enforceable.

We next consider appellants' argument that the Bank acted in bad faith. Appellants claim the Bank caused them to default by purposely overvaluing the properties when it extended the loan, thus inducing appellants to borrow more money than the properties were worth. The foreclosure judge rejected this argument, relying on the United Jersey Bank v. Kensey, 306 N.J. Super. 540 (App. Div. 1997).

In Kensey, the defendant challenged a foreclosure action, arguing the bank breached its duty by failing to share an appraisal, estimating the value of the pledged property to be substantially lower than the loan amount. Id. at 544, 549. We held "[t]he law 'imposes no duty on banks to disclose to the borrower the

manner in which the lender internally analyzes and underwrites a loan.'" Id. at 558 (quoting N. Trust Co. v. VIII S. Mich. Assocs., 276 Ill App. 3d. 355, 364 (Ill. App. Ct. 1995)). "[A] financial institution, acting within its conventional role as a lender of money, owes no duty of care to the borrower when preparing an appraisal of the borrower's collateral." Kensey, 306 N.J. Super. at 558. This is especially true because the relationship between a borrower and a lender is based on each party acting in their own interest and conducting themselves in an arms-length manner. Id. at 553.

Here, the Bank disclosed the appraisal information to appellants prior to execution of the loan documents. Unlike the defendants in Kensey, appellants failed to demonstrate the Bank encouraged them to rely on the appraisals or concealed any self-interest in processing the loan. The Bank was not required to send the appraisal information on which it based the amount it was willing to lend to appellants. Appellants had ample opportunity to obtain their own appraisals but did not do so. In addition, appellants failed to review the appraisals until 2014, well after the loan documents and all eight loan extension agreements were signed. Considering these facts, we discern no basis to disturb the judge's rejection of appellants' bad faith claim against the Bank.

We next address appellants' argument that the Bank entered into a binding forbearance agreement and breached that agreement by attempting to add unreasonable terms. Contract law requires "an 'offer and acceptance' by the parties, and the terms of the agreement must 'be sufficiently definite [so] that the performance to be rendered by each party can be ascertained with reasonable certainty.'" GMAC Mortg., LLC v. Willoughby, 230 N.J. 172, 185 (2017) (quoting Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992)). For a contract to be formed, the parties must "agree on essential terms and manifest an intention to be bound by those terms[.]" Weichert, 128 N.J. at 435.

Here, no agreement on the essential terms of the forbearance agreement existed. The parties disagreed on several material terms, including the length of the forbearance period, the interest rate during the forbearance period, admission by appellants of a default under the loan, and execution of full releases in favor of the Bank. Appellants were also unwilling to grant a deed in lieu of foreclosure or provide a confession of judgment as part of the forbearance agreement. Because the parties were unable to agree to material and essential terms, there was no meeting of the minds on a forbearance agreement.

Finally, we review appellants' contention that the judge handling the action on the note erred in reconsidering summary judgment in favor of the

Bank. Appellants for the first time claim there were material factual disputes that precluded summary judgment. However, appellants never raised this argument to the motion judge. We need not consider arguments not properly presented to the trial court when an opportunity for such a presentation is available absent the matter going to the jurisdiction of the trial court or a concern of great public interest. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973); R. 2:10-2.

Even if appellants had raised such an argument, we reject the contention that reconsideration was improper. Reconsideration is "designed to seek review of an order based on the evidence before the court on the initial motion" and "is only to point out 'the matters or controlling decisions which counsel believes the court has overlooked or to which it has erred.'" Capital Fin. Co. of Del. Valley v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (quoting R. 4:49-2).

In this case, the Bank filed a motion for reconsideration based on an apparent error by the motion judge. The judge applied the doctrine of res judicata but was unaware at the time of the original decision that the matter involved a suit on the note and guaranty and not a second foreclosure action by the Bank. The Bank did not seek reconsideration to introduce new evidence or cure an inadequacy in the record. Rather, the Bank sought to address an issue

because the Bank believed the motion judge erred. Here, reconsideration was appropriate to correct a misperception by the motion judge in his original decision.

Res judicata is applicable to actions based on notes and guarantees where a final judgment has been entered in a foreclosure action involving the same issues and the same parties. See Cent. Penn Nat'l. Bank v. Stonebridge, Ltd., 185 N.J. Super. 289, 302-03 (Ch. Div. 1982). The judge in the foreclosure action dismissed the same defenses and claims raised by appellants in the action on the note. Therefore, the Bank was entitled to summary judgment in the action on the note based on the doctrine of res judicata.

Having reviewed the record, we are satisfied the orders entered in favor of the Bank in the Chancery action, the foreclosure action, and the action on the note were warranted.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3015-16T4